**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

FILED-ED4

03 JUN 26 AM 10:01

CLERK
U.S. DISTRICT COURT

| | |
|---|---|
| AARON PATTERSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) No. |
| vs. | ) |
| | ) Judge |
| Former Chicago Police Lt. JON BURGE #338; | ) |
| former CPD Sgt. JOHN BYRNE, #1453; | ) |
| former CPD Detectives JAMES PIENTA, | ) |
| #10063, WILLIAM MARLEY #9886; | ) |
| RAYMOND MADIGAN, #1471;WILLIAM | ) |
| PEDERSEN, #8553, DANIEL MCWEENY #14367,) |
| and JOSEPH DANZL, #12568; Assistant Cook | ) |
| County State's Attorney PETER TROY, former | ) |
| Assistant Cook County State's Attorney WILLIAM | ) |
| LACY; Cook County State's Attorney RICHARD | ) |
| DEVINE; Chicago Police Superintendent TERRY | ) |
| HILLARD; former Chicago Police Superintendent | ) |
| LEROY MARTIN; former OPS Director GAYLE | ) |
| SHINES; former counsel to the Superintendent, | ) |
| THOMAS NEEDHAM; the CITY OF CHICAGO; | ) |
| COOK COUNTY, ILLINOIS and its COOK | ) |
| COUNTY STATE'S ATTORNEYS'OFFICE | ) |
| | ) |
| Defendants. | ) |

DOCKETED
JUN 2 6 2003

03C 4433

JUDGE GOTTSCHALL

MAGISTRATE JUDGE
GERALDINE SOAT BROWN

**COMPLAINT**

**JURISDICTION**

1. The jurisdiction of the court is invoked pursuant to the Civil Rights Act, 42 U.S.C.

Sec. 1983 et seq.; the judicial code, 28 U.S.C. Sec. 1331 and 1343(a); the Constitution of the

United States; and pendent jurisdiction, as codified in 28 U.S.C. 1367(a).

**PARTIES**

2. Plaintiff Aaron Patterson is a 38 year old African-American man, a citizen of the

1

United States and a resident of the City of Chicago.

3. Defendant Jon Burge was a duly appointed and sworn Chicago Police lieutenant and the commanding officer of Chicago Police Area 2 Detectives Violent Crimes Unit. He later became the Commander of Area 3 Detective Division. Burge was the commanding officer of Defendants Byrne, Pienta, Marley, Madigan, McWeeny, Pedersen, and Danzl, engaged in the conduct complained of in the course and scope of his employment, and is sued in his individual capacity.

4. Defendant John Byrne was a duly appointed and sworn Chicago police sergeant who was assigned to the Violent Crimes Unit of the Detective Division at Area 2, and later, at Area 3, under the command of Defendant Burge, and who engaged in the conduct complained of in the course and scope of his employment. He is sued in his individual capacity.

5. Defendants James Pienta, William Marley, William Pedersen, Daniel McWeeny, Raymond Madigan, and Joseph Danzl were duly appointed and sworn City of Chicago police officers who were assigned to the Detective Division at Area 2 Violent Crimes under Defendant Burge's command and who engaged in the conduct complained of in the course and scope of their employment. These Defendants are sued in their individual capacity.

6. Defendant Burge was first assigned as a detective to Area 2 in 1972, then became a Sergeant, and, early in 1982, was promoted to Lieutenant and appointed as the commanding officer of the Area 2 Violent Crimes Unit. Additionally, he was the leader of a group of detectives at Area 2, and later at Area 3, which included Defendants Byrne, James Pienta, William Marley, William Pedersen, Daniel McWeeny and Raymond Madigan who repeatedly tortured, beat and otherwise physically abused and coerced suspects and arrestees in criminal

2

cases. Defendants Burge and Byrne engaged in torture and brutality themselves; they supervised, encouraged, sanctioned, condoned and ratified brutality and torture by other detectives; and they covered up this torture and brutality. In 1988, Burge was promoted to Commander of Area 3 detectives, and he held this assignment until 1991 when he was suspended, and subsequently fired by the Chicago Police Department for the torture and abuse of Andrew Wilson.

7. From 1987 to 1992, Leroy Martin was the Superintendent of Police for the City of Chicago, and as such was responsible for the policies, practices, and customs complained of herein. In 1983, he was Commander of Area 2 of the Detective Division and was thereby Defendant Burge's direct supervisor. He engaged in the conduct complained of in the course and scope of his employment and is sued in his individual capacity.

8. From 1998 to the present, Defendant Terry Hillard has been the Superintendent of Police for the City of Chicago, and as such is responsible for the policies, practices, and customs complained of herein. He engaged in the conduct complained of in the course and scope of his employment and is sued in his individual capacity.

9. From 1998 to 2002 Defendant Thomas Needham was counsel to, and administrative assistant for, Superintendent Terry Hillard who was his direct supervisor. He engaged in the conduct complained of in the course and scope of his employment and is sued in his individual capacity.

10. From 1990 to 1998, Defendant Gayle Shines was the Director of the Office of Professional Standards of the Chicago Police Department. Her direct supervisor was the Chicago Police Superintendent. She engaged in the conduct complained of in the course and scope of her

3

employment and is sued in her individual capacity.

11. Defendant City of Chicago is a municipal corporation, duly incorporated under the laws of the State of Illinois, and as such is responsible for the policies, practices and customs of the Chicago Police Department, its Office of Professional Standards, its Personnel Division, its Detective Division, and its Superintendent of Police.

12. Defendants Peter Troy and William Lacy were Assistant Cook County State's Attorneys. They engaged in the conduct complained of in the course and scope of their employment and are sued in their individual capacity.

13. Defendant Richard Devine has been the State's Attorney of Cook County from 1997 to the present, and as such is responsible for the policies, practices and customs of the State's Attorneys' Office. He engaged in the conduct complained of in the course and scope of his employment and is sued in his individual capacity.

14. Defendant Cook County and its State's Attorney's Office are responsible for the policies, practices and customs of its State's Attorney and said State's Attorneys Office.

## FACTS

15. On April 19, 1986, the Chicago Police Department discovered the dead bodies of Rafaela and Vincent Sanchez, in their apartment at 8849 S. Burley. Defendant Burge was notified and was present at the scene. On information and belief, Willie Washington murdered the Sanchezes.

16. Defendant Burge, Defendant Sergeant John Byrne, Defendant Detectives James Pienta, William Marley, Daniel McWeeny, and Joseph Danzl, and Area 2 detectives Peter

4

Dignan, John Yucaitis, Ronald Boffo, Charles Grunhard and James Lotito, were assigned to investigate the Sanchez murders.

17. On April 21, 1986, Defendant Joseph Danzl coerced and intimidated 16 year old Marva Hall, whose uncle was a suspect in the Sanchez murders, into falsely implicating Plaintiff.

18. Michael Arbuckle, a suspect in the Sanchez murders, was arrested on April 22, 1986 by Area 2 Detectives, accompanied by Defendant Jon Burge, taken to Area 2 headquarters, placed in an office, and questioned about the Sanchez murders by Burge and another officer. Burge told Arbuckle that they "really wanted to get Aaron Patterson" and attempted to "get [him] to say that Patterson was involved in the double murders."

19. When Arbuckle refused to implicate Plaintiff and requested a lawyer, Defendant Burge threatened him with electrocution and lethal injection, and stated that Arbuckle "would cooperate one way or another."

20. Arbuckle was again questioned the next morning about the Sanchez murders by Defendant Burge who threatened him with a beating and said he would "get some drug dealers to testify against [him] on the Sanchez murders if [he] did not cooperate." Arbuckle continued to deny involvement in the murders.

21. On or about April 23, 1986, Defendant McWeeny, Area 2 Detectives Dignan, Yucaitis, Grunhard, Lotito and Boffo, and their direct supervisor on the Sanchez investigation, Defendant Byrne, were informed by several persons that Willie Washington and his brother killed the Sanchezes.

22. For the next week, Defendants Byrne and McWeeny, and Detectives Yucaitis, Grunhard, Lotito, and Boffo unsuccessfully searched for Plaintiff.

23. On April 30, 1986, Plaintiff was arrested by Fourth District police officers, was taken to the Fourth District police station, and then transported to Area 2 by Defendants Pienta, Marley, and Pedersen.

24. During the ride to Area 2, Defendant Pienta told Plaintiff that if they had arrested him they would have killed him.

25. Upon arrival at Area 2, Plaintiff was placed in an interview room, handcuffed to the wall and questioned by Area 2 detectives for an hour about the Sanchez homicides. He denied any involvement in the homicides, was taken to 11th and State, and then was returned to the interview room approximately between 9:30 to 10:00 p.m.

26. Shortly after their return, Defendant Pienta told Plaintiff that he was "tired of this bullshit," left the room, and then returned with a gray plastic typewriter cover. When Plaintiff continued to deny his involvement in the crime, the Area 2 Defendants, including Pienta, Marley, and Pederson, handcuffed him behind his back, turned out the lights, repeatedly beat him in the chest, pushed the plastic cover over his face and ears and held the bag over his head for at least a minute, suffocating him.

27. Defendant Pienta then threatened to do something worse to Plaintiff if he did not cooperate. Plaintiff repeatedly asked for an attorney and persisted in refusing to cooperate, so the Area 2 Defendants, including Pienta, Marley, and Pederson, again turned off the lights and put the plastic cover over his head.

28. On this second occasion, the "bagging" went on for at least two minutes and Plaintiff was again punched on the body when the bag was over his head. The suffocation was even more unbearable than the first time, so Plaintiff stated to his torturers that he would say "anything you

6

say."

29. The Defendants then left the room to get a Felony Review State's Attorney. While they were gone, Plaintiff scratched into a bench in the interview room that he was "suffocated with plastic" and that his statement to the police was false.

30. Defendant Burge returned with an Assistant State's Attorney (ASA) who told Plaintiff that Burge said that Plaintiff wanted to make a statement. Plaintiff asked Burge to leave, and he did.

31. When alone with the ASA, Plaintiff told him he had nothing to say, while Burge was standing on the other side of the interrogation room door. The ASA told Burge that Plaintiff did not want to give a statement.

32. Burge returned to the room, said "you're fucking up," took his handgun out, put it on the table top, and said "we told you if you don't do what we tell you to, you're going to get something worse than before -- it will have been a snap compared to what you will get." He then asked Plaintiff if he was going to cooperate, said that if he revealed the torture, "its your word against ours and who are they going to believe, you or us," and stated that they could do anything they wanted to do to him.

33. Subsequently, ASA Peter Troy came in the interrogation room with Defendant Madigan. Plaintiff first agreed to make a statement in order to get phone calls to his family and an attorney, but after the phone calls were terminated by the Defendants, he refused to make a statement, or sign a written statement which Troy had written out.

34. Defendants Troy and Madigan physically attacked Plaintiff in an attempt to coerce him into signing a false statement.

7

35. Plaintiff continued to refuse to sign the statement, and Defendant McWeeny entered the room, professed not to be involved in the prior brutality, and urged Plaintiff to cooperate because the other Defendants "could do something serious to him if he didn't."

36. As a result of the torture and physical abuse visited upon him by the Defendants, as set forth above, Plaintiff said that he would agree with whatever the assistant state's attorneys and detectives said happened.

37. Defendant Pienta arrested Plaintiff's co-defendant, Eric Caine, interrogated him, hit him in the chest, and threatened him with the same treatment Plaintiff received if he did not give a statement. Caine then gave a false statement, and when he subsequently attempted to repudiate it, Defendant Madigan told him if he didn't sign it, he'd end up "just like Aaron Patterson." Madigan then hit Caine with his open hand over the ear and cheekbone, causing a loud pop and extreme pain in his ear, rupturing his ear drum. Caine doubled up, screamed, then he gave, and later signed, a court reported statement that was prepared by Defendants, which falsely implicated Plaintiff.

38. The Area 2 Defendants, together with Defendant ASAs Troy and Lacy, through this physical coercion and by fabrication, constructed false oral admissions, and false written statements, which they falsely attributed to the Plaintiff and his co-defendant, Eric Caine.

39. The Defendants reduced these fabricated and coerced false admissions to false official reports and communicated them to prosecuting attorneys who presented this false evidence at hearings and at trial in Plaintiff's prosecution.

40. Several of the Defendants, including Pienta, Marley, Madigan, Pederson, McWeeny Troy, and Lacy presented this fabricated and coerced evidence at Plaintiff's prosecution through

8

false and perjured testimony.

41. Additionally, the Defendants, including Burge, Byrne, Pienta, Marley, Madigan, Pederson, McWeeny, Danzl, Troy, and Lacy, suppressed from the prosecutors who prosecuted Plaintiff and the Judges and jury who heard Plaintiff's case, *inter alia*, that the admissions which they attributed to Plaintiff and Eric Caine were false, fabricated, and coerced through torture, that Marva Hall's testimony was false and coerced, and that Burge and Byrne supervised and were central actors in a cabal of Area 2 detectives, which also included, *inter alia*, Defendants Pienta, Marley, Madigan and McWeeny, who had previously tortured scores of other suspects in serious felony cases in order to obtain confessions.

42. As a direct and proximate result of the Defendants' fabrication, coercion and suppression of evidence, Plaintiff's motion to suppress his purported confession was denied, he was wrongfully convicted of murder, and he was sentenced to death and to death row, where his wrongful imprisonment continued.

43. After Plaintiff was convicted but before his motion for new trial was filed, the Office of Professional Standards of the Chicago Police Department, (OPS) completed an investigation into allegations of torture of suspects at Area 2. In a secret report which was approved by the Director of the OPS and forwarded to Defendant Superintendent Leroy Martin, the OPS found that from 1973 to 1985 there was a practice of systematic abuse of suspects held in custody at Area 2 and that certain Area 2 command personnel were aware of such abuse and condoned it. OPS further found that this practice included psychological techniques and planned torture, and that Area 2 command personnel were aware of the systematic abuse and encouraged it either by actively participating in it or by failing to take any action to stop it. Command personnel at Area

9

2 during part or all of that time included Defendants Burge and Martin. It also found Defendants

Burge and Byrne were "players" in this policy and practice. In another section of this Report, the

OPS also found that Burge and two other Area 2 detectives tortured Andrew Wilson and

recommended that Burge be fired.

44. Defendant Superintendent Martin and other command personnel delayed, obstructed,

and otherwise undermined the OPS investigation, report, findings and conclusions set forth

above, *inter alia*, by suppressing the findings that Wilson was tortured and refusing to suspend,

transfer or remove Burge either before, or for nearly a year after, the findings of the OPS were

first made known to them in November of 1990.

45. Defendant Superintendent Martin and other command personnel further delayed,

obstructed, and otherwise undermined the OPS investigation, report, findings and conclusions

set forth above, *inter alia*, by suppressing the findings that there was systematic abuse at Area 2

which implicated Defendants Martin, Burge, Byrne, and other Area 2 detectives until this report

and findings were ordered produced by Federal Court order in February of 1992.

46. This suppression prevented Plaintiff from obtaining highly exculpatory evidence for

use in his motion for new trial, which was denied in 1991, and on appeal in the Illinois Supreme

Court. The Supreme Court subsequently affirmed his conviction and death sentence.

47. Additionally, Defendants Martin, OPS Director Shines, and other command

personnel, in violation of police regulations, refused to investigate numerous other allegations of

police torture which were brought to their attention, including those made by Plaintiff and torture

victim Melvin Jones.

48. In September of 1988, Defendant Devine, together with law partner William Kunkle,

and their law firm, were retained by the Defendant City of Chicago to represent Defendant Jon

Burge and several Area 2 detectives, including John Yucaitis and Patrick O'Hara, in the civil

rights lawsuit brought against them and the City of Chicago by Area 2 torture victim Andrew

Wilson.

49. For the next eight years, Defendant Devine, Mr. Kunkle, and their law firm

continued to represent Defendant Burge, John Yucaitis, Patrick O'Hara and the other Area 2

Defendants in the Wilson civil cases, as well as in the Police Board Proceedings against Burge,

Yucaitis and O'Hara, wherein they were retained by the Fraternal Order of Police. Additionally,

Defendant Devine, Mr. Kunkle and their law firm were retained by the Defendant City of

Chicago to represent Defendants Burge and Byrne in another civil rights torture case where a

pattern and practice of torture was alleged. As a result of this representation, Defendant Devine,

Mr. Kunkle and their law firm received over one million dollars in attorney's fees.

50. From 1988 to 1996, Defendant Devine, Mr. Kunkle, and their law firm were

informed of a wealth of compelling evidence that their clients, including Burge and Byrne, were

centrally involved in a pattern and practice of torturing suspects, including Plaintiff, at Area 2,

and Devine, Kunkle, and their co-counsel, together with Defendants Burge, and Byrne, and Area

2 detectives Yucaitis and O'Hara, made numerous litigation decisions designed to protect Burge,

Byrne Yucaitis, and O'Hara from criminal, civil and administrative liability in the face of that

evidence.

51. In 1994 Plaintiff filed a post conviction petition which alleged, *inter alia*, that he was

entitled to a new motion to suppress hearing and a new trial on the basis of newly discovered

torture evidence which had been previously suppressed.

11

52. In 1997, Defendant Devine became the State's Attorney of Cook County. Acting with a clear conflict of interest and acting under the color of his authority of State's Attorney, Defendant Devine has continued, from 1997 to the present, to protect the interests of his Area 2 clients, including Defendants Burge and Byrne, and to cover up their central role in the pattern and practice of torture, *inter alia,* by:

a. making false public statements in which he discredited evidence of torture against his clients and other Area 2 Defendants including evidence presented by Plaintiff and other Area 2 victims, whereby they sought new suppression hearings, new trials, new sentences, pardons and/or clemency on the basis that false confessions were tortured from them;

b. making false statements in which he discredited the evidence of torture against his clients and other Area 2 Defendants to public officials who sought a new trial for Plaintiff on the basis that a false confession was tortured from him by Burge, Byrne, and other Area 2 Defendants;

c. refusing to further investigate the allegations that his clients and other Area 2 and Area 3 detectives were central actors in a pattern and practice of torture and abuse which included the torture of Plaintiff and obstructing all attempts to so investigate;

d. suppressing evidence which further established that his clients, and other Area 2 and Area 3 detectives were central actors in the pattern and practice of torture and which included Plaintiff; and

e. otherwise using his influence and decision-making power as State's Attorney of Cook County to continue the wrongful convictions and imprisonment of Plaintiff.

53. From 1993 until 1998 when she left office, Defendant OPS Director Gayle Shines

12

suppressed findings of OPS investigators that Defendant Byrne and several other Area 2 detectives, under the command of Defendant Burge, tortured and abused six suspects, including death row inmate Stanley Howard, as well as the evidence which supported these findings.

54. In 1998, Defendants Hillard and Needham, with full knowledge that Defendants Burge, Byrne, and other Area 2 detectives participated in a pattern and practice of torture and abuse of suspects, including Plaintiff, violated police regulations and obstructed justice by overturning the OPS findings set forth in paragraph 53 above, by refusing to investigate Plaintiff's and other torture victims' claims that they had been tortured, by refusing to investigate OPS Director Gayle Shines' suppression of evidence, and by suppressing these OPS files and findings from criminal defendants, including Plaintiff.

55. In an interview which aired both locally and nationally on WBBM-TV in December of 1999, Defendant Byrne made false and defamatory statements concerning Plaintiff and his protestations of innocence and torture, including that "the detectives who worked with him would not" torture suspects, that Plaintiff's allegations that he was tortured "certainly did not square with [his] recollection" and that Plaintiff was, "without a doubt," "guilty of the [Sanchez] murders."

56. The actions of the Defendants set forth above resulted in the further continuation of Plaintiff's wrongful conviction and false imprisonment until January 10, 2003, when Illinois Governor George Ryan granted Plaintiff a pardon on the basis of innocence. In granting Plaintiff and three other Burge death row torture victims, Madison Hobley, Leroy Orange and Stanley Howard, innocence pardons, the Governor found that:

The category of horrors was hard to believe. If I hadn't reviewed the cases myself, I

wouldn't believe it. We have evidence from four men, who did not know each other, all getting beaten and tortured and convicted on the basis of the confessions they allegedly provided. They are perfect examples of what is so terribly broken about our system.

57. At the time of his release, Plaintiff had been wrongfully imprisoned since April 30, 1986, and on death row for thirteen years.

58. In response to Plaintiff's innocence pardon, Defendant Devine, again acting on behalf of his clients Burge and Byrne, and under the color of his office, publicly defamed Plaintiff and the three other torture victims whom Governor Ryan also pardoned on the basis of innocence by stating: "I think these people are evil. Should these people be among us? I don't think so." He referred to them as "convicted murderers" while condemning the pardons as "outrageous" and "unconscionable," and threatened to challenge them in Court.

59. In response to Plaintiff's innocence pardon, Defendant Troy, on information and belief, at the behest of and in concert with, Defendant Devine, also made false and defamatory public statements about Plaintiff, including that he saw no evidence of torture and that Plaintiff was guilty of the murders. Another former prosecutor, again, on information and belief, in concert with and at the behest of, Defendant Devine, publicly defamed pardoned torture victim Madison Hobley, saying that he was "guilty beyond a shadow of a doubt."

60. Defendants Burge, Byrne, Pienta, Marley, Pedersen, McWeeny, Madigan, Danzl, Troy, Lacy, Martin, Devine, Shines, Hillard, and Needham, acting jointly and with other police and prosecutorial investigative, supervisory, and command personnel, together and under color of law, reached an understanding, engaged in a course of conduct, engaged in a joint action and otherwise conspired among and between themselves to deprive Plaintiff of his constitutional rights, and did deprive Plaintiff of said rights, including his rights to be free from unreasonable

14

arrest and seizure, from wrongful confinement, and imprisonment, from involuntary

incrimination, and from interrogation techniques which "shock the conscience" and his rights to

access to the Courts and to a fair and impartial trial, as protected by the First, Fourth, Fifth, Sixth

Eighth, and Fourteenth Amendments to the United States Constitution. Because said actions

were done with the knowledge and purpose of depriving Plaintiff, who is African-American, of

the equal protection of the laws and/or of equal privileges and immunities under the law, and

with racial animus toward the Plaintiff, they also deprived Plaintiff of his right to equal

protection of the laws under the Fourteenth Amendment, and 42 U.S.C. §§ 1983 and 1985.

61. In furtherance of this conspiracy or conspiracies, Defendants Burge, Byrne, Pienta,

Marley, Pedersen, McWeeny, Madigan, Danzl, Troy, Lacy, Martin, Devine, Shines, Hillard, and

Needham, together with their co-conspirators, committed the overt acts set forth above,

including, but not limited to, the wrongful imprisonment, charging and prosecution of Plaintiff

and other torture victims; the fabrication and coercion of knowingly false inculpatory evidence

against Plaintiff and other torture victims; the unconstitutional torture and coercion of Plaintiff

and other torture victims in order to compel them to make false inculpatory statements against

themselves; the repeated deception of prosecutors and judges, by, *inter alia*, making knowing

misstatements and the presentation of this knowingly false and incomplete evidence to

prosecutors and judges; the making of false and defamatory public statements concerning

Plaintiff; the giving of false testimony and the filing of false and incomplete statements and

reports; the suppression of favorable, exculpatory evidence; the failure to come forward with a

truthful account of the events; the refusal to investigate and the subversion and quashing of good

faith investigations and findings; the abuse of public office and the exploitation of a blatant

15

conflict of interest to cover-up the acts of torture and abuse; and other acts set forth above.

62. Said conspiracy or conspiracies, joint actions and overt acts continue to this date, have caused and continue to cause Plaintiff's constitutional rights to be violated and the injuries, pain, suffering, fear, mental anguish, detention, imprisonment, humiliation, defamation of character and reputation, and loss of freedom and companionship, as set forth more fully above and below.

63. The actions of the Defendants and their co-conspirators as set forth above proximately and directly caused Plaintiff grievous permanent physical and emotional injury, including nearly 17 years of involuntary imprisonment in maximum security prison, with 13 years on death row, often locked inside for 23 hours per day for weeks or months at a time, often in stifling heat or numbing cold. Each day Plaintiff suffered the fear and terror of being executed for crimes he did not commit. While wrongfully imprisoned, he also suffered loss of freedom, companionship and income; and continues to suffer mental and physical pain, suffering, anguish, and fear, including post traumatic stress disorder.

## COUNT I
### (42 U.S.C. 1983 Claim for Deprivation of Right to Fair Trial and for Wrongful Conviction)

64. Plaintiff re-alleges paragraphs 1 through 63.

65. Defendants Burge, Byrne, Pienta, Marley, Pedersen, McWeeny, Madigan, Danzl Troy, Lacy, Martin, Devine, Shines, Hillard, and Needham, individually, jointly, and in conspiracy, caused the wrongful charging, prosecution, and conviction of Plaintiff for the Sanchez murders, and/or the continuation of said wrongful conviction, by fabricating and coercing the false admissions which formed the basis for Plaintiff's said charging, prosecution

and conviction, by withholding from the prosecutors, judges and defense attorneys involved in Plaintiff's prosecution the fact that these admissions were false, fabricated, and coerced, by suppressing additional exculpatory torture findings and evidence, as well as other exculpatory evidence, by giving a false and incomplete version of events to prosecutors, by writing false reports and giving false testimony, by improperly influencing the judges hearing Plaintiff's case, *inter alia*, by making false public statements, by obstructing investigations which would have led to discovery of further exculpatory evidence, and by the additional wrongdoing set forth above, thereby unconstitutionally depriving Plaintiff of his liberty and violating his right to a fair and impartial trial and not to be wrongfully convicted, as guaranteed by the Fourteenth Amendment to the U.S. Constitution.

66. The actions of Defendants Burge, Byrne, Pienta, Marley, Pedersen, McWeeny, Madigan, Danzl, Troy, Lacy, Martin, Devine, Shines, Hillard, and Needham in depriving Plaintiff of his right to a fair trial and not to be wrongfully convicted were the direct and proximate cause of the injuries to Plaintiff which are set forth above.

WHEREFORE, Plaintiff demands judgment against Defendants Burge, Byrne, Pienta, Marley, Pedersen, McWeeny, Madigan, Danzl, Troy, Lacy, Martin, Devine, Shines, Hillard, and Needham for substantial compensatory damages, and, because these Defendants acted maliciously, willfully, wantonly, and/or with reckless disregard for Plaintiff's constitutional rights, for substantial punitive damages, plus the costs of this action, attorneys' fees and such other relief as this Court deems equitable and just.

17

## COUNT II
### (42 U.S.C. § 1983 Claim for False Imprisonment)

67. Plaintiff re-alleges paragraphs 1 through 66.

68. The actions of Defendants Burge, Byrne, Pienta, Marley, Pedersen, McWeeny, Madigan, Danzl, Troy, Lacy, Martin, Devine, Shines, Hillard, and Needham, individually, jointly, and in conspiracy, in falsely imprisoning Plaintiff for the Sanchez murders, and continuing said imprisonment for nearly seventeen years, without probable cause, violated Plaintiff's Fourth and Fourteenth Amendment rights to be free from unreasonable seizures.

69. The actions of the Defendants in falsely imprisoning Plaintiff and covering up their own misconduct were the direct and proximate cause of Plaintiff's injuries and damages as more fully set forth above.

WHEREFORE, Plaintiff demands judgment against Defendants Burge, Byrne, Pienta, Marley, Pedersen, McWeeny, Madigan, Danzl, Troy, Lacy, Martin, Devine, Shines, Hillard, and Needham for substantial compensatory damages, and, because these Defendants acted maliciously, willfully, wantonly, and/or with reckless disregard for Plaintiff's constitutional rights, for substantial punitive damages, plus the costs of this action, attorneys' fees and such other relief as this Court deems equitable and just.

## COUNT III
### (42 U.S.C. § 1983 Claim for Coercive Interrogation)

70. Plaintiff re-alleges paragraphs 1 through 69.

71. The actions of Defendants Burge, Byrne, Pienta, Marley, Pedersen, McWeeny, Madigan, Troy, and Lacy, individually, jointly, and in conspiracy, in coercively interrogating

18

Plaintiff, using torture techniques which "shock the conscience," and resulting in false and fabricated admissions to the Sanchez murders, violated his Fifth and Fourteenth Amendment rights to be free from compulsory self-incrimination and deprivation of liberty without due process of law.

72. The actions of the Defendants in using torture to coercively interrogate Plaintiff were the direct and proximate cause of Plaintiff's injuries and damages as more fully set forth above.

WHEREFORE, Plaintiff demands judgment against Defendants Burge, Byrne, Pienta, Marley, Pedersen, McWeeny, Madigan, Troy, and Lacy for substantial compensatory damages, and, because these Defendants acted maliciously, willfully, wantonly, and/or with reckless disregard for Plaintiff's constitutional rights, for substantial punitive damages, plus the costs of this action, attorneys' fees and such other relief as this Court deems equitable and just.

**COUNT IV**
**(42 U.S.C. § 1983 Due Process Claim for Deprivation of Access to Courts)**

73. Plaintiff re-alleges paragraphs 1 through 72.

74. Defendants Burge, Byrne, Pienta, Marley, Pedersen, McWeeny, Madigan, Danzl, Troy, Lacy, Martin, Devine, Shines, Hillard, and Needham, individually, jointly, and in conspiracy, by their wrongful charging, prosecution, conviction, and imprisonment, and their resultant obstruction of justice and suppression of evidence, violated Plaintiff's right to access to the courts, *inter alia*, by suppressing evidence favorable to the claims asserted herein, and by effectively causing Plaintiff to forfeit several of his claims, to delay pursuing his other claims for many years, and to proceed without key evidence which remains suppressed or has been destroyed, lost, or otherwise diminished do to the lapse in time, in violation of his Fifth and

19

Fourteenth Amendment rights to due process of law and access to the courts.

WHEREFORE, Plaintiff demands judgment against Defendants Burge, Byrne, Pienta, Marley, Pedersen, McWeeny, Madigan, Danzl, Troy, Lacy, Martin, Devine, Shines, Hillard, and Needham for substantial compensatory damages, and, because these Defendants acted maliciously, willfully, wantonly, and/or with reckless disregard for Plaintiff's constitutional rights, for substantial punitive damages, plus the costs of this action, attorneys' fees and such other relief as this Court deems equitable and just.

**COUNT V**
**(42 U.S.C. § 1983 *Monell* Policy Claim Against City of Chicago)**

75. Plaintiff re-alleges paragraphs 1 through 74.

76. The actions of Defendants Burge, Byrne, Pienta, Marley, Pedersen, McWeeny, Madigan, Danzl, Troy, Lacy, Martin, Devine, Shines, Hillard, and Needham, as alleged above, were done pursuant to one or more interrelated *de facto* policies, practices and/or customs of the Defendant City of Chicago, its Police Department, its Police Board, its Office of Professional Standards (OPS) and Internal Affairs Division (IAD), its Personnel Division, and/or its Superintendents.

77. At all times material to this complaint, Defendant City and its Police Department, Superintendents, OPS, IAD, Personnel Division, Detective Division, and/or Police Board had interrelated *de facto* policies, practices, and customs which included, *inter alia*:

a) conducting physically, psychologically or otherwise illegally or improperly coercive interrogations of witnesses, suspects and arrestees in order to obtain confessions and wrongful convictions, including, but not limited to, the use of torture techniques under the command and

20

supervision of Defendants Burge and Byrne at Area 2, and later at Area 3;

b) the filing of false reports, and giving false statements and testimony about said interrogations and confessions and fabricating parts or all of said confessions, suppressing evidence concerning said interrogations and confessions, pursuing and obtaining wrongful prosecutions and false imprisonments on the basis of confessions obtained during said interrogations, and otherwise covering up the true nature of said interrogations and confessions in circumstances which included, but were not limited to, the use of torture techniques by Area 2 and Area 3 detectives under the command and supervision, and with the active participation of, Defendants Burge and Byrne;

c) the failure to videotape the interrogation or questioning of suspects, arrestees, and witnesses, including, but not limited to, in the circumstances set forth in a-b above;

d) the failure to properly train, supervise, discipline, transfer, monitor, counsel and otherwise control police officers, particularly those who are repeatedly accused of false arrests, wrongful imprisonments, malicious prosecutions and wrongful convictions; of making false reports and statements; and/or of physically, psychologically or otherwise illegally or improperly coercive questioning or interrogation of witnesses, suspects and arrestees including, but not limited to, persons who were tortured and or physically and/or psychologically abused during questioning. This failure to properly train, supervise, discipline, transfer, monitor, counsel and otherwise control includes, but is not limited to "repeater" Defendants Burge, Byrne, Pienta, Marley, Madigan, McWeeny, Pedersen and all the other Area 2 and 3 detectives who were repeatedly accused of torturing and physically abusing suspects at Area 2 and Area 3;

e) the police code of silence, specifically in cases where officers engaged in the violations

21

articulated in paragraphs a-d above, particularly police torture and other unconstitutional and coercive interrogations at Area 2 and Area 3 under the command and supervision of Defendants Burge and Byrne, whereby police officers refuse to report or otherwise cover-up instances of police misconduct, and/or the fabrication, suppression and destruction of evidence of which they are aware, despite their obligation under the law and police regulations to do so. Said code of silence also includes police officers either remaining silent or giving false and misleading information during official investigations in order to protect themselves or fellow officers from internal discipline, civil liability, or criminal charges, and perjuring themselves in criminal cases where they and their fellow officers have tortured or otherwise coercively or otherwise unconstitutionally interrogated a suspect, arrestee or witness, or falsely arrested, imprisoned and prosecuted a criminal defendant, and includes, but is not limited to, cases where torture techniques under the command and supervision of Defendants Burge and Byrne at Area 2, and later at Area 3, have been employed; and

f) covering up and suppressing evidence and findings, refusing to properly investigate, arrest and charge, and otherwise obstructing justice in police torture cases, particularly those that arose at Area 2 and Area 3 under the supervision, and with the participation of, Defendants Burge and Byrne.

78. The pattern and practice of torture and abuse at Area 2, the cover-up of said abuse and the wrongful prosecutions and convictions which resulted therefrom, were well known within Area 2 both well before and after Plaintiff was tortured and wrongfully convicted, including by the Commanders of Area 2, which included Defendant Leroy Martin, as well as to

22

the successive Police Superintendents, including Defendants Martin and Hillard, and to the successive Directors of OPS, including Defendant Shines, the Chiefs of Detectives, including Defendant Hillard, and to other policy making, command, and supervisory police personnel, who participated in the cover-up and suppression of evidence and the wrongful prosecution and conviction of the Plaintiff and other torture victims, *inter alia*, in the manner set forth in this complaint.

79. Said interrelated policies, practices and customs, as set forth above, both individually and together, were maintained and implemented with deliberate indifference, encouraged, *inter alia*, the coercing of statements from suspects, witnesses and arrestees, by torture and related abusive tactics and techniques, the fabrication of confessions and other evidence, the suppression of evidence of torture and other exculpatory evidence, the intimidation of witnesses, the making of false statements and reports, the giving of false testimony, and the pursuit and continuation of wrongful convictions and false imprisonments, and were, separately and together, a direct and proximate cause of the unconstitutional acts and perjury committed by the named Defendants and their co-conspirators, and the injuries suffered by the Plaintiff.

80. Additionally, said failure to properly train, discipline, monitor, control, assign, transfer, supervise, and counsel Defendants Burge, Byrne, Pienta, Marley, Pedersen, McWeeny, Madigan, Martin, Shines and Needham was also done with deliberate indifference and likewise acted as a direct and proximate cause of the injuries to Plaintiff.

81. Additionally, and/or alternatively, the involvement in, and ratification of, the unconstitutional actions set forth above by Chicago police policymakers, including, but not limited to, Defendants Leroy Martin and Terry Hillard, and their direct subordinates, including,

23

but not limited to, Defendants Shines and Needham, establishes that said constitutional violations were directly and proximately caused by the City of Chicago and its Police Department.

WHEREFORE, Plaintiff demands judgment against Defendants City of Chicago for substantial compensatory damages, plus costs and attorneys' fees and whatever additional relief this Court finds equitable and just.

## COUNT VI
### (Monell Claim Against Cook County and SAO)

82. Plaintiff re-alleges paragraphs 1 through 81.

83. Additionally, the actions of Defendants Burge, Byrne, Pienta, Marley, Pedersen, McWeeny, Madigan, Danzl, Troy, Lacy, Martin, Devine, Shines, Hillard, and Needham, as alleged above, were done pursuant to one or more interrelated *de facto* policies, practices and/or customs of the Defendant Cook County and its State's Attorney's Office, including a) that the Assistant State's Attorneys assigned to Felony Review participated in, monitored, or were otherwise aware of the coercive and abusive interrogations conducted at Area 2 and Area 3 and suppressed and covered up all evidence of torture, abuse and coercion of which they became aware during their participation and monitoring of said interrogations; b) starting in 1992 and continuing to the present, after becoming specifically aware that there was a pattern and practice of torturing and abusing suspects at Area 2 and Area 3, related *de facto* policies, practices and customs of failing to investigate this pattern and practice, of suppressing and covering up evidence favorable to defendants who were prosecuted and convicted on the basis of confessions tortured or otherwise physically coerced from them at Area 2 and Area 3, and of continuing to maliciously prosecute, to defend, and to publicly justify by making false and defamatory

24

statements, wrongful convictions in cases where said tortured and coerced confessions were at issue.

84. Said interrelated policies, practices and customs, as set forth above, both individually and together, were maintained and implemented with deliberate indifference, encouraged, *inter alia*, the coercing of statements from suspects, witnesses and arrestees, by torture and related abusive tactics and techniques, the fabrication of confessions and other evidence, the suppression of evidence of torture and other exculpatory evidence, the intimidation of witnesses, the making of false statements and reports, the giving of false testimony, and the pursuit and continuation of wrongful convictions and false imprisonments, and were, separately and together, a direct and proximate cause of the unconstitutional acts and perjury committed by the named Defendants and their co-conspirators, and the injuries suffered by the Plaintiff.

85. The involvement in, and ratification of, the unconstitutional actions set forth above by Cook County State's Attorney's policymakers, including, but not limited to, Defendant Devine, establishes that said constitutional violations were directly and proximately caused by Defendant Cook County and its State's Attorney's Office.

WHEREFORE, Plaintiff demands judgment against Defendants Cook County and the Cook County State's Attorneys' Office for substantial compensatory damages, plus costs and attorneys' fees and whatever additional relief this Court finds equitable and just.

## COUNT VII
### (State Law Claim for False Imprisonment)

86. Plaintiff re-alleges paragraphs 1 through 63.

87. The imprisonment of Plaintiff, without probable cause, individually, jointly, and in

conspiracy by Defendants Burge, Byrne, Pienta, Marley, Pedersen, McWeeny, Madigan, Danzl,

Troy, Lacy, Martin, Devine, Shines, Hillard, and Needham constituted the tort of false

imprisonment under Illinois law.

88. Defendants' actions in imprisoning Plaintiff were willful and wanton.

WHEREFORE, Plaintiff demands compensatory damages in an amount in excess of Fifty

Thousand ($50,000) dollars against Defendants Burge, Byrne, Pienta, Marley, Pedersen,

McWeeny, Madigan, Danzl, Troy, Lacy, Martin, Devine, Shines, Hillard, and Needham, and,

because these Defendants acted in a malicious, willful and/or wanton manner toward Plaintiff,

punitive damages, and such other and additional relief as this Court deems just and equitable.

**COUNT VIII**
**(State Law Claim for Malicious Prosecution)**

89. Plaintiff re-alleges paragraphs 1 through 63.

90. Defendants Burge, Byrne, Pienta, Marley, Pedersen, McWeeny, Madigan, Danzl,

Troy, Lacy, Martin, Devine, Shines, Hillard, and Needham, individually, jointly, and in

conspiracy, initiated and continued a malicious prosecution without probable cause against

Plaintiff. Said prosecution was ultimately terminated in Plaintiff's favor. The Defendants'

actions were done in a willful and wanton manner, and directly and proximately caused the

injury and damage to Plaintiff set forth above.

WHEREFORE, Plaintiff demands actual or compensatory damages against Defendants

Burge, Byrne, Pienta, Marley, Pedersen, McWeeny, Madigan, Danzl, Troy, Lacy, Martin,

Devine, Shines, Hillard, and Needham, in an amount in excess of Fifty Thousand ($50,000)

dollars, and because these Defendants acted in a malicious, willful and/or wanton manner toward

26

Plaintiff, punitive damages, and such other and additional relief as this Court deems equitable and just.

## COUNT IX
### (State Law Claim for Intentional Infliction of Emotional Distress)

91. Plaintiff re-alleges paragraphs 1 through 63.

92. Defendants Burge, Byrne, Pienta, Marley, Pedersen, McWeeny, Madigan, Danzl, Troy, Lacy, Martin, Devine, Shines, Hillard, and Needham, *inter alia*, by torturing a false confession from Plaintiff, by fabricating the details of said confession, by procuring his prosecution, conviction, and death sentence for a double murder he did not commit by means of said false confession, by fabricating, coercing, and suppressing other evidence, by continuing his false imprisonment on death row after procuring his wrongful conviction, by making false and defamatory statements, and by otherwise abusing and defaming Plaintiff, engaged in extreme and outrageous conduct.

93. Defendants Burge, Byrne, Pienta, Marley, Pedersen, McWeeny, Madigan, Danzl, Troy, Lacy, Martin, Devine, Shines, Hillard, and Needham intended, by subjecting Plaintiff to such humiliating, degrading conduct, to inflict severe emotional distress on Plaintiff, and knew that their conduct would cause Plaintiff and his family severe emotional distress.

94. As a direct and proximate result of Defendants' outrageous conduct, Plaintiff was injured, and has experienced, and continues to experience, severe emotional distress, including fear of execution, nightmares, sleep disruption, symptoms of post traumatic stress disorder, anxiety, depression, and inability to focus or concentrate.

WHEREFORE, Plaintiff demands judgment against Defendants Burge, Byrne, Pienta,

27

Marley, Pedersen, McWeeny, Madigan, Danzl, Troy, Lacy, Martin, Devine, Shines, Hillard, and

Needham for compensatory damages, in an amount in excess of Fifty Thousand ($50,000)

dollars, and, because these Defendants acted in a malicious, willful and/or wanton manner

toward Plaintiff, for punitive damages, plus the costs of this action, and such other relief as this

Court deems equitable and just.

## COUNT X
### (State Law Claim for Defamation)

95. Plaintiff re-alleges paragraphs 1 through 63.

96. Defendants Devine, Byrne, and Troy publicly and repeatedly made false statements

accusing Plaintiff of committing the crime of murder and of lying under oath about said crimes

and his torture, including, but not limited to, those set forth in paragraphs 52 (a-b), 55, and 57-59

above, thereby committing defamation *per se*.

97. Additionally, these false and defamatory statements by Defendants Devine, Byrne,

and Troy caused the Plaintiff special damages and pecuniary loss.

WHEREFORE, Plaintiff demands judgment against Defendants Troy, Byrne, and Devine

for compensatory damages, in an amount in excess of Fifty Thousand ($50,000) dollars, and,

because these Defendants acted in a malicious, willful and/or wanton manner toward Plaintiff,

for punitive damages, plus the costs of this action, and such other relief as this Court deems

equitable and just.

## COUNT XI
### [State Claim for Conspiracy]

98. Plaintiff re-alleges paragraphs 1 through 97.

99. Defendants Burge, Byrne, Pienta, Marley, Pedersen, McWeeny, Madigan, Danzl,

Troy, Lacy, Martin, Devine, Shines, Hillard, and Needham, with other unsued co-conspirators, including police and prosecutorial investigative, supervisory, and command personnel, together reached an understanding, engaged in a course of conduct, and otherwise jointly acted and/or conspired among and between themselves to falsely imprison, maliciously prosecute, to defame and to intentionally inflict severe emotional distress on Plaintiff.

100. In furtherance of this conspiracy or conspiracies, the Defendants named above, together with their unsued co-conspirators, committed the overt acts set forth above, including, but not limited to, those set forth in paragraph 61 above.

101. Said conspirac(ies) and overt acts were and are continuing in nature.

102. Defendants' and their co-conspirators' overt acts, as set forth above, which were committed jointly and/or while conspiring together to falsely imprison, maliciously prosecute, defame, and intentionally inflict emotional distress on the Plaintiff, constitute the tort of conspiracy as set forth above.

WHEREFORE Plaintiff demands compensatory damages in an amount in excess of Fifty Thousand ($50,000) dollars, jointly and severally from the Defendants named in this Count, and, because these Defendants acted in a malicious, willful and/or wanton manner toward Plaintiff, for punitive damages, plus the costs of this action and whatever additional relief this Court deems equitable and just.

## COUNT XII
### (State Law Respondeat Superior Claim)

103. Plaintiff re-alleges paragraphs 1-63 and 86-102.

104. Defendants Burge, Byrne, Pienta, Marley, Pedersen, McWeeny, Madigan, Danzl,

29

Martin, Shines, Hillard, and Needham were, at all times material to this complaint, employees of the Defendant City of Chicago, were acting within the scope of their employment, and their acts which violated state law are directly chargeable to the Defendant City under state law pursuant to *respondeat superior*.

105. Defendants Devine, Troy and Lacy were, at all times material to this complaint, employees of Cook County and its State's Attorneys' Office, were acting within the scope of their employment, and their acts which violated state law are directly chargeable to the Defendant County and its State's Attorneys' Office under state law pursuant to *respondeat superior*.

WHEREFORE, Plaintiff demands judgment against the City of Chicago, Cook County and its State's Attorneys' Office for any and all compensatory damages awarded on Plaintiff's state law claims, plus the costs of this action and whatever additional relief this Court deems equitable and just.

## COUNT XII
### (745 ILCS 10/9-102 Claims Against the City and County)

106. Plaintiff re-alleges paragraphs 1 through 105.

107. Defendant City of Chicago was the employer of Defendants Burge, Byrne, Pienta, Marley, Pedersen, McWeeny, Madigan, Danzl, Shines, Hillard, Needham and Martin at all times relevant and material to this complaint.

108. These Defendants committed the acts alleged above under color of law and in the scope of their employment as employees of the City of Chicago.

109. Defendant Cook County and its State's Attorneys' Office was the employer of Defendants Devine, Troy and Lacy at all times relevant and material to this complaint.

110.  These Defendants committed the acts alleged above under color of law and in the

scope of their employment as employees of Cook County and its State's Attorneys' Office.

WHEREFORE, Plaintiff, pursuant to 745 ILCS 10/9-102, demands judgment against the

Defendants City of Chicago, Cook County and its State's Attorneys' Office, in the amounts

awarded to Plaintiff against the individual Defendants as damages, attorneys' fees, costs and

interest, and for whatever additional relief this Court deems equitable and just.

Dated: June 26,  2003                            Respectfully submitted,

G. Flint Taylor
Joey L.  Mogul
Michael E.  Deutsch
People's Law Office

1180 N. Milwaukee
Chicago, IL 60622
773/235-0070

Standish E. Willis
407 S. Dearborn Street
Chicago, IL  60604

Demitrus Evans
Law Office of Demitrus Evans
621 Sheridan Road, Suite G
Evanston, IL  60202

Attorneys for Plaintiff

**Plaintiff demands trial by jury on all counts.**

31

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as ~~required~~ by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for ~~the use~~ of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

AARON PATTERSON

**DEFENDANTS** Former Chicago Police Lt. Jon Burge #3~~

former CPD Sgt. JOHN BYRNE, #1453; former CPD Det~~

JAMES PIENTA, #10063 WILLIAM MARLEY #9886; RAY~~

MADIGAN #9886 ET. AL.

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    Cook
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT    Cook
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
People's Law Office
1180 N. Milwaukee Ave.
Chicago, IL 60622    (773) 235-0070

ATTORNEYS (IF KNOWN)

**03C 44~~**

**DOCKETED**

JUN 2 6 2003

JUDGE GOTTSCHA~~

## II. BASIS OF JURISDICTION   (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government
     Plaintiff

☒ 3 Federal Question
     (U.S. Government Not a Party)

☐ 2 U.S. Government
     Defendant

☐ 4 Diversity
     (Indicate Citizenship of Parties
     in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF
(For Diversity Cases Only)            AND ONE BOX FOR DEFENDANT)

|  | PTF | DEF |  | |
|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place | ☐ |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place | ☐ |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ |

## IV. ORIGIN    (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original
    Proceeding

☐ 2 Removed from
    State Court

☐ 3 Remanded from
    Appellate Court

☐ 4 Reinstated or
    Reopened

Transferred from
☐ 5 another district
    (specify)

☐ 6 Multidistrict
    Litigation

Appeal to
☐ 7 Magistrate
    Judgment

## V. NATURE OF SUIT    (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTE |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury — | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product |     Med. Malpractice | ☐ 625 Drug Related Seizure | ☐ 423 Withdrawal | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument |     Liability | ☐ 365 Personal Injury |     of Property 21 USC 881 |     28 USC 157 | ☐ 450 Commerce/ICC Rates |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & |     Product Liability | ☐ 630 Liquor Laws | | ☐ 460 Deportation |
|     & Enforcement of Judgment |     Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers |     Injury Product Liability | ☐ 650 Airline Regs | ☐ 820 Copyrights |     Corrupt Organizations |
| ☐ 152 Recovery of Defaulted |     Liability | **PERSONAL PROPERTY** | ☐ 660 Occupational | ☐ 830 Patent | ☐ 810 Selective Service |
|     Student Loans | ☐ 340 Marine | ☐ 370 Other Fraud |     Safety/Health | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ |
|     (Excl. Veterans) | ☐ 345 Marine Product | ☐ 371 Truth in Lending | ☐ 690 Other | |     Exchange |
| ☐ 153 Recovery of Overpayment |     Liability | ☐ 380 Other Personal | | **SOCIAL SECURITY** | ☐ 875 Customer Challenge |
|     of Veteran's Benefits | ☐ 350 Motor Vehicle |     Property Damage | **LABOR** | ☐ 861 HIA (1395ff) |     12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 385 Property Damage | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract |     Product Liability |     Product Liability |     Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motion to Vacate | ☐ 730 Labor/Mgmt. Reporting | | ☐ 895 Freedom of |
| ☐ 220 Foreclosure | ☐ 442 Employment |     Sentence |     & Disclosure Act | **FEDERAL TAX SUITS** |     Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ |     Habeas Corpus: | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff | ☐ 900 Appeal of Fee Determination |
| ☐ 240 Torts to Land |     Accommodations | ☐ 530 General | |     or Defendant) |     Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☒ 444 Welfare | ☐ 535 Death Penalty | ☐ 790 Other Labor Litigation | ☐ 871 IRS — Third Party | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☒ 440 Other Civil Rights | ☐ 540 Mandamus & Other | |     26 USC 7609 |     State Statutes |
| | | ☐ 550 Civil Rights | ☐ 791 Empl. Ret. Inc. | | ☐ 890 Other Statutory Actions |
| | | ☐ 555 Prison Condition |     Security Act | | |

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

The jurisdiction of the court is invoked pursuant to the Civil Rights Act, 42 U.S.C. 1983 et seq.; the judicial code 28 U.S.C.
1331 and 1343 (a); and supplementary jurisdiction, as codified in 28 U.S.C. 1367(a).

## VII. REQUESTED IN    CHECK IF THIS IS A **CLASS ACTION**
## COMPLAINT    ☐ UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint
**JURY DEMAND:**   ☒ YES    ☐

## VIII. This case   ☒ is not a refiling of a previously dismissed action.

☐ is a refiling of case number _____, previously dismissed by Judge _____

DATE
June 26, 2003

SIGNATURE OF ATTORNEY OF RECORD

UNITED STATES DISTRICT COURT

**UNITED STATES DISTRICT COURT**

FILED-ED4

**NORTHERN DISTRICT OF ILLINOIS** 03 JUN 26 AM 10: 58

AARON PATTERSON

vs.

CLERK
U.S. DISTRICT COURT

In the Matter of
Former Chicago Police Lt. JON BURGE #338; former
CPD Sgt. JOHN BYRNE, #1453; former CPD
Detectives JAMES PIENTA #10063, WILLIAM MARLEY
#9886; RAYMOND MADIGAN, #1471; ET. AL.

Case Number:

**03C 4433**

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

Plaintiff

DOCKET

JUDGE GOTTSCHALL   JUN 2 6

| (A) | (B) |
|---|---|
| SIGNATURE *Michael E. Deutsch* | SIGNATURE |
| | MAGISTRATE JUDGE GERALDINE SOAT BROWN |
| NAME Michael E. Deutsch | NAME |
| FIRM People's Law Office | FIRM |
| STREET ADDRESS 1180 N. Milwaukee Ave. | STREET ADDRESS |
| CITY/STATE/ZIP Chicago, IL 60622 | CITY/STATE/ZIP |
| TELEPHONE NUMBER (773) 235-0070 | TELEPHONE NUMBER |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 0623261 | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) |
| MEMBER OF TRIAL BAR? YES ☒ NO ☐ | MEMBER OF TRIAL BAR? YES ☐ NO ☐ |
| TRIAL ATTORNEY? YES ☒ NO ☐ | TRIAL ATTORNEY? YES ☐ NO ☐ |
| | DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ |

| (C) | (D) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME | NAME |
| FIRM | FIRM |
| STREET ADDRESS | STREET ADDRESS |
| CITY/STATE/ZIP | CITY/STATE/ZIP |
| TELEPHONE NUMBER | TELEPHONE NUMBER |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) |
| MEMBER OF TRIAL BAR? YES ☐ NO ☐ | MEMBER OF TRIAL BAR? YES ☐ NO ☐ |
| TRIAL ATTORNEY? YES ☐ NO ☐ | TRIAL ATTORNEY? YES ☐ NO ☐ |
| DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ | DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ |

**PLEASE COMPLETE IN ACCORDANCE WITH INSTRUCTIONS ON REVERSE.**

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS

FILED-ED4

03 JUN 26 AM 10:58

CLERK
U.S. DISTRICT COURT

**AARON PATTERSON**

vs.

In the Matter of
Former Chicago Police Lt. JON BURGE #338; former
CPD Sgt. JOHN BYRNE, #1453; former CPD
Detectives JAMES PIENTA #10063, WILLIAM MARLEY
#9886; RAYMOND MADIGAN, #1471; ET. AL.

Case Number:

03C 4433

DOCK

JUDGE GOTTSCHALL
JUN 2

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

Plaintiff

MAGISTRATE JUDGE
NE SOAT BROWN

| (A) | (B) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME | NAME |
| G. Flint Taylor | Joey Mogul |
| FIRM | FIRM |
| People's Law Office | same as (A) |
| STREET ADDRESS | STREET ADDRESS |
| 1180 N. Milwaukee Ave. | |
| CITY/STATE/ZIP | CITY/STATE/ZIP |
| Chicago, IL 60622 | |
| TELEPHONE NUMBER | TELEPHONE NUMBER |
| (773) 235-0070 | |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) |
| 2802058 | 6243516 |
| MEMBER OF TRIAL BAR? YES XX NO ☐ | MEMBER OF TRIAL BAR? YES ☐ NO XX |
| TRIAL ATTORNEY? YES XX NO ☐ | TRIAL ATTORNEY? YES X NO ☐ |
| | DESIGNATED AS LOCAL COUNSEL? YES X NO ☐ |

| (C) | (D) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME | NAME |
| Standish E. Willis | Demitrus Evans |
| FIRM | FIRM |
| Law Office of Standish E. Willis, LTD. | Law Office of Demitrus Evans |
| STREET ADDRESS | STREET ADDRESS |
| 407 S. Dearborn St. | 621 Sheridan Road, Suite G |
| CITY/STATE/ZIP | CITY/STATE/ZIP |
| Chicago, IL 60604 | Evanston. IL 60202 |
| TELEPHONE NUMBER | TELEPHONE NUMBER |
| 312  554-0005 | |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) |
| 530616 or ARDC 6186476 | |
| MEMBER OF TRIAL BAR? YES XX NO ☐ | MEMBER OF TRIAL BAR? YES X NO ☐ |
| TRIAL ATTORNEY? YES XX NO ☐ | TRIAL ATTORNEY? YES X NO ☐ |
| DESIGNATED AS LOCAL COUNSEL? YES XX NO ☐ | DESIGNATED AS LOCAL COUNSEL? YES X NO ☐ |

**PLEASE COMPLETE IN ACCORDANCE WITH INSTRUCTIONS ON REVERSE.**