# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | Geraldine Soat Brown |
|---|---|---|---|
| **CASE NUMBER** | 03 C 4433 | **DATE** | 11/18/2004 |
| **CASE TITLE** | Aaron Patterson vs. Jon Burge, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  For the reasons set out in the Memorandum Opinion and Order, the non-party deponents' motion for entry of a protective order is granted as follows: The transcripts and videotapes of the Movants' depositions shall be held confidential with access to those depositions limited to (a) attorneys of record in the *Hobley* and *Patterson* cases and the attorneys representing the Movants; (b) the staff of those attorneys under the attorneys' direct supervision and responsibility, and (c) the parties to the case and the individual Movants. In the event any party or other person seeks to file a portion or excerpt of any Movant's deposition as part of the public record, counsel preparing the filing shall notify counsel for the deponent sufficiently in advance so that the deponent may, if the deponent chooses, seek a further protective order. Enter Memorandum Opinion and Order. *Geraldine Soat Brown*
(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | **Document Number** |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | NOV 1 9 2004 | |
| | Notified counsel by telephone. | | | date docketed | 171 |
| | Docketing to mail notices. | | U.S. DISTRICT COURT | | |
| | Mail AO 450 form. | | 2004 NOV 19 AM 8:00 | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | | FILED | 11/18/2004 date mailed notice | |
| GR | courtroom deputy's initials | | Date/time received in central Clerk's Office | GR mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MADISON HOBLEY,<br>    Plaintiff,<br><br>v.<br><br>CHICAGO POLICE COMMANDER<br>JON BURGE, et al.,<br>    Defendants. | Case No. 03 C 3678<br><br>Judge Marvin Aspen<br><br>Magistrate Judge Geraldine Soat Brown |

DOCKETED
NOV 1 9 2004

| | |
|---|---|
| AARON PATTERSON,<br>    Plaintiff,<br><br>v.<br><br>JON BURGE, et al.,<br>    Defendants. | Case No. 03 C 4433<br><br>Judge Joan B. Gottschall<br><br>Magistrate Judge Geraldine Soat Brown |

## MEMORANDUM OPINION AND ORDER

Geraldine Soat Brown, Magistrate Judge,

Before the court is a motion filed by non-party deponents, Peter Dignan, Michael Hoke, Tony Maslanka, George Basile, William Wagner, Fred Hill, George Corless, Patricia Harrison, Thomas Ferry, and Dan Gaffney, for entry of a protective order.[1] [Dkt 328.][2] Non-party deponents Michael

---

[1] William Marley was previously included as a movant in this motion. However, the movants state that his name was included in error and has been withdrawn. (Non-Party Deponents' Reply to Pl.s' Resp. to Mot. Protective Order at 1 n. 1.) [Dkt 253.]

[2] All docket numbers refer to the docket in *Hobley v. Burge*, Case No. 03 C 3678.

1



McDermott and Steven Brownfield sought leave to join the motion for protective order [dkt 337], which this court granted on November 1, 2004 [dkt 338.] For the following reasons, the non-party deponents' motion for entry of a protective order is GRANTED as to their request for a protective order barring dissemination of deposition videotapes and transcripts. The non-party deponents' request that Plaintiffs be barred from commenting regarding their depositions will be the subject of a separate opinion.

## BACKGROUND

The non-party deponents bringing the present motion (collectively, the "Movants") are former Chicago Police Department detectives who worked at Area 2 with or for Jon Burge or other defendants in the *Hobley* and *Patterson* cases. (Mot. at 2.) Apparently, the lawyers representing Hobley and Patterson (collectively "Plaintiffs' counsel") have taken or are in the process of taking the Movants' depositions in discovery in those cases. The Movants state that, as a result of the ongoing investigation by the Special Prosecutor appointed by the Circuit Court of Cook County regarding allegations of abuse at Area 2, they have been required to assert their Fifth Amendment right to decline to answer questions in their depositions. (*Id.* at 5.) After the videotaped depositions of Burge and other defendants in this case, a number of news stations broadcast portions of those depositions showing Burge and others declining to answer questions and asserting the Fifth Amendment privilege. (*Id.*) The Movants claim that on September 30, 2004, they sent a letter to Plaintiffs' counsel requesting that they agree to refrain from disseminating the transcripts from the Movants' depositions and refrain from making public comments regarding the deponents' identity, testimony or credibility. (Mot. at 2; Mot., Ex. A.) The Movants state that Plaintiffs' counsel never

responded to the letter. (Mot. at 2.)

On October 4, 2004, movant Tony Maslanka was presented for his deposition, at which time Plaintiffs' counsel indicated that they would not agree to refrain from disseminating the Movants' deposition transcripts and videotapes. (*Id.* at 2.) However, Plaintiffs' counsel agreed not to disseminate any of the deposition transcriptions and videotapes of the Movants' depositions until the issue was resolved by the court. (*Id.*)

The Movants seek the entry of a protective order barring Plaintiffs from releasing the videotapes and/or transcriptions of their depositions in this cause to any third parties. (*Id.* at 1, 3.) They contend the "only purpose disclosure will serve is to annoy, embarrass and oppress the Non-Parties." (*Id.* at 3.) Plaintiffs oppose the entry of a protective order. (Pl.s' Joint Resp. Non-Party Deponents' Mot. Protective Order ("Resp.") at 1.) [Dkt. 345]. Plaintiffs argue that the Movants lack standing to seek such a protective order, and that the Movants have failed to apply the proper balancing test for withholding their deposition transcripts and videotapes from the public and failed to cite any case law that would support such a restriction in this case. (Resp. at 1, 9.)

## DISCUSSION

A. The Movants have standing to seek a protective order.

Federal Rule of Civil Procedure 26(c) allows the court to issue a protective order "for good cause shown." That Rule provides: "Upon motion by a party or by the person from whom discovery is sought, . . . and for good cause shown, the court in which the action is pending . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . ." Fed. R. Civ. P. 26(c).

3

Plaintiffs do not seriously dispute the right of a subpoenaed witness to seek a protective order. Instead, Plaintiffs argue that because the Movants are not defendants in the *Hobley* or *Patterson* cases, they have no interest in a fair trial in those cases. (Resp. at 9.) However, the reason the Movants are invoking their Fifth Amendment privilege is the on-going investigation by the Special Prosecutor and the possibility of criminal charges. (Mot. at 5.) The Movants have a protectable interest in a fair trial on any criminal charges against them. The Movants also have an interest in seeing that their assertion of the Fifth Amendment is not excessively burdened or "costly." *See La Salle Bank Lake View v. Seguban,* 54 F.3d 387, 389 (7th Cir. 1995) (citing *Spevack v. Klein,* 385 U.S. 511, 515 (1967)).[2] The fact that the Movants are or were police officers does not limit their Fifth Amendment rights. *See Spevack,* 385 U.S at 516 (stating that "[w]e find no room in the privilege against self-incrimination for classifications of people so as to deny it to some and extend it to others").[3] The Movants have standing to bring the present motion.

B. Balancing the interests.

The party moving for a protective order must establish that good cause exists to enter the protective order. Fed. R. Civ. P. 26(c). Good cause is difficult to define in absolute terms, but

---

[2]In *Spevack,* 385 U.S. at 514, the United States Supreme Court quoted its opinion in *Malloy v. Hogan,* 378 U.S.1, 8 (1964), stating that the Fifth Amendment guarantees "the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty . . . for such silence." The Court further stated that "[i]n this context 'penalty' is not restricted to fine or imprisonment. It means . . . the imposition of any sanction which makes assertion of the Fifth Amendment privilege 'costly.'" *Id.* at 515(quoting *Griffin v. State of California,* 380 U.S. 609, 614 (1965)).

[3]Interestingly, in *Spevack,* the Court held that the Fifth Amendment privilege "extends its protections to lawyers as well as to other individuals," overruling a prior decision holding otherwise. 385 U.S. at 514.

generally signifies a sound basis or legitimate need to take judicial action. *Wiggins v. Burge*, 173 F.R.D. 226, 229 (N.D. Ill. 1997) (citing *In Re Alexander Grant & Co. Litig.*, 820 F.2d 352, 356 (11th Cir. 1987)). Good cause is established by showing that the disclosure will cause a clearly defined and serious injury. *Felling v. Knight*, No. IP 01-0571-C-T/K, 2001 WL 1782360, *2 (S.D. Ind. Dec. 21, 2001) (Tinder, J.) In determining whether there is good cause for a protective order, the court must balance the interests involved. *Doe v. Marsalis*, 202 F.R.D. 233, 237 (N.D. Ill. 2001); *Wiggins*, 173 F.R.D. at 229.

As a threshold matter, it is important to note that the Movants' motion does *not* relate to materials filed as part of the public record in this case. The local rules of the Northern District of Illinois prohibit the filing of discovery materials, including deposition transcripts and videotapes, as part of the public record except as evidence. L.R. 26.3. In *Baxter Intl., Inc. v. Abbott Laboratories*, 297 F.3d 544 (7th Cir. 2002), the Seventh Circuit drew a distinction between materials generated by pretrial discovery and materials that are in the public record because they form part of the judicial decision-making process:

> Secrecy is fine at the discovery stage, before the material enters the judicial record. See *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984). But those documents, usually a small subset of all discovery, that influence or underpin the judicial decision are open to public inspection unless they meet the definition of trade secrets or other categories of bona fide long-term confidentiality.

297 F.3d at 545 (citations omitted). *Accord Securities & Exchange Comm'n v. TheStreet.com*, 273 F.3d 222, 233 (2nd Cir. 2001)(holding that deposition discovery materials are not "judicial documents" because they play no role in the performance of Article III functions, therefore, there is no presumption of public access to them). Similarly, in *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 944-45 (7th Cir. 1999), the Seventh Circuit recognized the public

5

interest in what goes on at all stages of a judicial proceeding, but in the context of criticizing an order that permitted sealing portions of the public record. The court held that the trial judge must make a determination of good cause before entering an order sealing materials that are in the public record. *Citizens*, 178 F.3d at 945-46.

The parties dispute whether the presumption of public access to discovery materials referred to by the Seventh Circuit in *Citizens*, 178 F.3d at 945, survived the 2000 amendment of Rule 5 of the Federal Rules of Civil Procedure. As amended in 2000, Rule 5(d) now provides that certain discovery materials, including depositions, shall not be filed with the Clerk of the Court until used in the proceeding or the court orders filing. Fed. R. Civ. P. 5(d). However, what is implicit in *Citizens* and explicit in *Baxter* is that the public interest in access to materials that form the basis of a judicial decision is greater than in other materials generated in the discovery process. Here, the Movants' motion does *not* raise the issue of whether it would be appropriate to order that any of the deposition transcripts or videotapes at issue be filed under seal if they were submitted to the court as evidence. What is at issue here is the dissemination of the deposition transcripts and videotapes to third persons, particularly to the media.[4]

In *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984), cited by the Seventh Circuit in *Baxter*, the United States Supreme Court considered the issue whether parties to civil litigation have a First Amendment right to disseminate, in advance of trial, information gained through the pretrial discovery process. The Supreme Court held that the First Amendment does not preclude court control over discovered information, stating that "pretrial depositions and interrogatories are not

---

[4]The distinction between sealing portions of the public record and prohibiting the dissemination of materials that are not part of the public record was not discussed by the court in *Felling*, 2001 WL 1782360, a case discussed by the parties.

6

public components of a civil trial. Such proceedings were not open to the public at common law, ... and, in general, they are conducted in private as a matter of modern practice." *Seattle Times*, 467 U.S. at 32-33. The Court observed that "[m]uch of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action. Therefore, restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information." *Id.* at 33.

The Supreme Court further concluded that an order prohibiting dissemination of discovery materials prior to trial is not the type of classic prior restraint requiring exacting First Amendment scrutiny. *Id.* at 33-34. However, Justices Brennan and Marshall, concurring, stated that review of such orders must consider First Amendment concerns. *Id.* at 37-38 (Brennan and Marshall, JJ., concurring). The Court's opinion noted that the order under review did not prohibit dissemination of information gained through means independent of the court's processes, and, therefore, the parties' First Amendment rights were less implicated. *Id.* at 34. Importantly, the present motion involves only materials obtained through the litigation process, specifically, the depositions of the Movants. It does not involve any material that Plaintiffs obtained from any other source.

In arguing that there is good cause for the entry of a protective order, the Movants assert that the exercise of their right under the Fifth Amendment and their right to privacy would be harmed by the public dissemination of their deposition transcripts and videotapes. (Mot. at 5-6.) They are concerned that Plaintiffs' counsel will release the tapes and transcripts of their depositions, which show the Movants asserting the Fifth Amendment privilege in response to questions by Plaintiffs' counsel, in order to portray them unfairly as asserting their Fifth Amendment right in order to conceal misconduct. (*Id.* at 5.) At the oral argument on the present motion, Plaintiffs' counsel did

not deny that was the effect of the dissemination, although Plaintiffs' counsel would, no doubt, dispute whether the portrait is "unfair." Plaintiffs' counsel was candid in saying that the purpose of disseminating the transcripts and videotapes to the media was to increase public interest in the cases, in the hope of encouraging witnesses to come forward, but also to create public pressure on the City of Chicago to stop providing defense counsel to the individual defendants in these cases. Significantly, the Movants correctly point out that there is no additional information about the *Hobley* or *Patterson* cases that is provided in their depositions, other than the fact of their invoking the Fifth Amendment. Thus, it is apparent that the purpose of the dissemination is to capitalize on the Movants' assertion of the Fifth Amendment as creating an inference of guilt.

Some history is instructive at this point. Earlier in the *Hobley* case, the individual defendants sought to stay the taking of their depositions until the conclusion of the Special Prosecutor's investigation. (Def.s' Mot. Stay Taking Def.s' Deps. at 4.) [Dkt 96.] It is recognized that allowing a civil case to proceed against a defendant who also may be subject to criminal prosecution involving the same matter may undermine the defendant's Fifth Amendment privilege. *See Cruz v. County of Du Page*, No. 96 C 7170, 1997 WL 370194, *1-2 (N.D. Ill. June 27, 1997) (Coar, J.), quoting *Securities & Exchange Comm'n v. Dresser Indus., Inc.*, 628 F.2d 1368, 1376 (D.C. Cir. 1980). Such a situation forces the defendant to choose between defending the civil lawsuit and abandoning his Fifth Amendment rights. Over Hobley's objection, the individual defendants' depositions were stayed for a time to see whether a schedule for the Special Prosecutor's investigation would be established. (Order, Jan. 21, 2004.) [Dkt 104.] When it became apparent that no end date for the investigation would be established, the stay was lifted and the depositions proceeded. In light of the circumstances of this case, especially Hobley's interest in not having the lawsuit stalled indefinitely,

the court determined that the depositions should proceed, notwithstanding the burden placed on the individual defendants' assertion of their Fifth Amendment privilege. (Order, June 30, 2004.) [Dkt 254.]

In considering the Movants' motion, however, the court finds that the Plaintiffs have not set forth an offsetting interest to justify imposing an additional "cost" on the Movants' assertion of their constitutional right.

The dissemination of the videotaped depositions for broadcasting is particularly troubling. The video of a person repeatedly invoking the Fifth Amendment in response to a series of questions is indeed striking, which is why it makes such a good "soundbite." If the Special Prosecutor's investigation results in criminal charges against the Movants, the prosecutor would be forbidden from even alluding to the fact that the defendant declined to testify. But if the deposition video is broadcast on the local news, a large segment of the potential jury pool will have been exposed to the memorable image of the defendant doing just that.

In arguing that a protective order should not be granted, Plaintiffs cite a number of cases that have lifted protective orders and allowed the dissemination of discovery materials. Notably, most of these cases had been disposed of when the court lifted the protective order. *See, e.g., Jones v. Clinton*, 12 F. Supp. 2d 931, 934-35 (E.D. Ark. 1998) (allowing dissemination of deposition transcripts after granting summary judgment, but barring dissemination of videotapes);. *Marsalis*, 202 F.R.D. at 234 (lifting protective order after lawsuit settled); *Wiggins*, 173 F.R.D. at 227 (releasing disputed documents after settlement of lawsuit). None of those cases cited by Plaintiffs involved broadcasting the invocation of the Fifth Amendment by persons concerned about a pending criminal investigation.

9

Even in the single case cited by Plaintiffs where deposition transcripts were released prior to the termination of the case, the video recordings were protected. *See Felling*, 2001 WL 1782360, *3. The court observed that "[v]ideotapes are subject to a higher degree of potential abuse than transcripts. They can be cut and spliced and used as 'sound-bites' on the evening news . . . The potential embarrassment the Non-Parties would suffer at seeing their deposition performances displayed repeatedly during media accounts of [defendant] constitutes good cause and requires this court to grant the Non-Parties' motion for a protective order for the videotapes." *Id. See also Jones v. Clinton*, 12 F. Supp. 2d at 935.

There is no doubt that the public has a strong and proper interest in the *Hobley* and *Patterson* cases. However, it is also important to remember that what is at issue here is the assertion of a constitutionally-protected privilege. Considering all the facts and circumstances, and balancing the respective interests, this court find that Movants have shown good cause for the entry of a protective order to bar Plaintiffs and their counsel from disseminating the videotapes and transcripts of the Movants' depositions.

## CONCLUSION

For the foregoing reasons, the Movants' motion for entry of a protective order is granted as follows: The transcripts and videotapes of the Movants' depositions shall be held confidential with access to those depositions limited to (a) attorneys of record in the *Hobley* and *Patterson* case and the attorneys representing the Movants; (b) the staff of those attorneys under the attorneys' direct supervision and responsibility, and (c) the parties to the case and the individual Movants. In the event any party or other person seeks to file a portion or excerpt of any Movant's deposition as

part of the public record, counsel preparing the filing shall notify counsel for the deponent sufficiently in advance so that the deponent may, if the deponent chooses, seek a further protective order.

IT IS SO ORDERED.

/s/ Geraldine Soat Brown
GERALDINE SOAT BROWN
United States Magistrate Judge

November 18, 2004