# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 4433 | **DATE** | 1/5/2005 |
| **CASE TITLE** | Patterson vs. Burge, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Motion to Quash Subpoena

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter order. The motion by non-parties Chicago Tribune Company, WGN Continental Broadcasting Company and WMAQ-TV to quash subpoenas directed to non-party journalists [154-1] is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JAN 0 6 2005 | |
| | Notified counsel by telephone. | | date docketed | 183 |
| X | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |



JAN 0 6 2005

| | |
|---|---|
| Aaron Patterson,<br><br>        Plaintiff,<br><br>v.<br><br>Former Chicago Police Lt. Jon Burge, et al.<br><br>        Defendants. | Case No. 03 C 4433<br><br>Honorable Joan B. Gottschall |

## **Memorandum Opinion and Order**

On August 5, 2004, plaintiff Aaron Patterson was arrested on federal drug and weapons charges. Patterson's arrest and comments about it he made in interviews with a number of journalists have been highly publicized. On October 18, 2004, defendants in this lawsuit served subpoenas on various news organizations, specifically, the Chicago Tribune Company, WGN Continental Broadcasting Company and WMAQ-TV ("the news organizations") seeking all videotape and audiotape footage, including outtakes, and any and all documents, including notes and transcripts, reflecting statements made by Patterson between August 6, 2004 and August 19, 2004.[1] The three news organizations have moved to quash the subpoenas, arguing that the subpoenas violate the Illinois Reporter's Privilege Act, the First Amendment to the United States Constitution and the Illinois Constitution, and further require quashing or modification under Rule 45(c). In their Response to the Motion to Quash, the defendants have withdrawn their request for notes, having learned that there are sufficient video and audiotapes to render any interview notes cumulative. In

---

[1]This description generalizes the requests, although there were minor differences in the requests to each of the news organizations.

1



addition, the court is under the impression that the news organizations have already made available to the defendants all broadcast footage and published interviews. If that is not the case, such materials should immediately be turned over since none of the arguments advanced by the subpoena respondents justify the withholding of any previously-published materials.[2]

In *McKevitt v. Pallasch*, 339 F.3d 530 (7th Cir. 2003), the Seventh Circuit stated that it could find no basis, in law or fact, for recognizing a reporter's privilege under federal or state law cognizable in federal proceedings. Rather, it stated that instead of invoking a privilege, "courts should simply make sure that a subpoena duces tecum directed to the media, like any other subpoena duces tecum, is reasonable in the circumstances." This court will therefore pretermit consideration of the news organizations' statutory and constitutional arguments and analyze the motion to quash under the standards of Rule 45(c).

The Seventh Circuit has recently dealt with Rule 45(c) standards in *Northwestern Memorial Hospital v. Ashcroft*, 362 F.3d 923 (7th Cir. 2004). Recognizing that "pretrial discovery is a fishing expedition and one can't know what one has caught until one fishes," the court noted that when the fish objects under Rule 45(c), the fisherman is called upon to justify his pursuit. 362 F.3d at 931. In this circumstance, the court must engage in a balancing process, balancing the burden of compliance against the benefits of the requested production. *Id.* at 927. Put in a fish-free way, non-parties are not treated exactly like parties in the discovery context, and the possibility of mere relevance may not be enough; rather, non-parties are entitled to somewhat greater protection. *See Builders Ass'n of Greater Chicago v. City of Chicago*, 2001 WL 664453 at *7 n. 4 (N.D. Ill. June

---

[2]If the parties cannot negotiate an agreement covering the costs of any such materials, they can seek the assistance of the court.

12, 2001). That protection encompasses weighing the need for the material subpoenaed against the burden involved in its production. Burden in this context means more than mere administrative hardship. It encompasses the interests that enforced production would compromise or injure. *Northwestern Hospital, supra,* at 928-29.

The justifications defendants have advanced for these subpoenas are meager, to say the least, and consist largely of arguing repeatedly, albeit in different verbal formulations, that the materials sought may contain relevant information. The defendants assert that the complaint alleges a continuing conspiracy to injure Patterson emotionally, and point out that in his statements to reporters, as well as in statements at his preliminary hearing, Patterson at times claimed that his 2004 arrest was part of that conspiracy. Defendants assert, "If plaintiff has made non-privileged statements about this alleged conspiracy, surely defendants are entitled to production of these statements so they can discover the basis for the claim." Response at 5. Defendants, however, suggest no basis for believing that there are statements other than those they already have and never explain why, if they are curious about the basis for this claim, they have not served a contention interrogatory asking for it. Further, defendants argue that because plaintiff may be claiming that the arrest was part of the conspiracy alleged in his complaint, "it is crucial that defendants be permitted access to statements made by Patterson to test his claims of conspiracy in this case." *Id.* This is obviously the same justification set forth above but stated in more urgent terms. Finally, defendants summarize their argument: "Given that the lawsuit contains a claim for an ongoing conspiracy to inflict emotional distress, Patterson's statements to the Journalists are absolutely relevant to this case." *Id.* The essence of this perseverative argument, as far as the court understands it, is that because Patterson has stated that his arrest relates to the allegations of his complaint, anything he

3

may have said about his arrest is relevant to his civil case.

The remainder of defendants' argument appears to invoke other bases for discovery, but really does nothing more than flesh out their relevance argument: "Patterson's statements are relevant for a host of other reasons as well. Among other things, they may be used for impeachment; or fodder for cross-examination;[3] or lead to other admissible evidence; or possibly deemed an admission under Fed. Rule.Evid. 801(d)(2)." If possible relevance were the standard for enforcing the subpoenas, defendants would surely prevail. No one is arguing that the interview records do not contain relevant statements by Patterson. Moreover, it is possible that Patterson said something during those interviews that could be used to cross-examine him in the civil suit or be used as an admission. Defendants are simply speculating, however, that the news organizations' non-published materials contain impeachment information or admissions. Defendants have apparently served these subpoenas before questioning Patterson, by deposition or interrogatories, about his statements to the news organizations or his conspiracy theory. Thus, defendants can establish relevance in its broadest and weakest sense. They cannot establish that their subpoenas seek information they do not already have or that is not readily available from other sources. Of course, the fact that what the defendants seek is Patterson's own statements adds something to the "mere relevance" of their requests.

Against these weak justifications, the burden on respondents is significant. Granted, simply turning over the tapes from which their published materials were drawn does not represent a major administrative burden. But requiring such production would establish that simply on the basis of a showing of relevance (and merely *possible* usefulness, since there is no reason to believe that

---

[3]Again, defendants assert little more than different verbal formulations for the same claim. There is not much difference between evidence useful for impeachment, fodder for cross-examination and admissions of a party opponent.

4

Patterson told the reporters anything in private that he has not said publicly), private parties in a civil suit can call on the press to turn over the fruits of its investigative efforts. Since the press is involved in collecting information about all manner of things and circumstances that frequently end up in litigation, if there is no standard higher than mere relevance which civil lawyers must satisfy to help themselves to reporters' records, news organizations will be very busy responding to civil subpoenas. Similarly, the news organizations' efforts to maintain their independence and gain the trust of sources is an interest that will be severely impaired if mere relevance, meaning as it does here a mere relationship to the subject matter of a civil suit, makes their non-public records available on request. Further, the journalistic and editorial judgments involved in deciding what to ask an interview subject, and in deciding what to use from the material gathered, are the commercial and intellectual stock in trade of the news organizations; surely some good justification should be advanced before these journalistic and editorial judgments can be examined by outsiders and made public in the context of a civil lawsuit. As Judge Brown stated in her September 16, 2004 ruling on the Chicago Reader's Motion to Quash Subpoena in *Hobley v. Burge,* No. 03 C 3678, Rule 45(c) explicitly permits the court to protect against the disclosure of trade secrets and other confidential commercial information, and "[t]here is nothing in the Federal Rules that suggests that research for the purpose of news reporting [not to speak of editorial judgments about what should and should not be published] is to be given *less* protection than research for the purpose of product development." (Order, p.13.)

In this case, where the subject matter of the civil suit raises issues of immense public importance, the press' efforts to shed light on the non-public recesses of certain police station activities has value to the entire City. To the extent the news organizations' resources are

squandered providing information to civil litigants; or their ability to create sources hampered by judicial insensitivity to the value of their attempts to protect the confidentiality of the information they receive; or their motivation to develop their information and use it as they see fit; or the commercial value to the involved news organizations of the judgments involved in investigating and selecting material for publication dissipated as their "work product" becomes fair game for civil litigants in their relentless quest to "discover" everything, the news organizations become the indentured servant of the litigants, and their ability to do their important work will be severely impaired. The kind of discovery requested here not only burdens the news organizations but burdens the public interest in a robust press.

In *McKevitt v. Pallasch*, 339 F.3d 530 (7th Cir. 2003), the court affirmed an order of the district court requiring news organizations to produce to plaintiff McKevitt tape recordings of an interview conducted with David Rupert by journalists who were writing Rupert's biography. McKevitt was being prosecuted in Ireland for terrorism-related activities and wanted the tape recordings to assist him in cross-examining Rupert, who was expected to be a key prosecution witness. The Seventh Circuit found that there was no interest in confidentiality being compromised, inasmuch as the source, Rupert, was known and had indicated that he did not object to disclosure. In the case at bar, similarly, the interest in confidentiality is weak, since the source, Patterson, is known. Further, his objection to disclosure is entitled to little weight if any weight at all inasmuch as he is the plaintiff in this case and has no cognizable interest in the privacy of things he says to third parties that bear, even tangentially, on the litigation. But the Seventh Circuit in *McKevitt* also cited the important public obligation to assist in criminal proceedings and the federal interest in cooperating in the criminal proceedings of friendly foreign nations as factors favoring disclosure.

Neither of those interests is operative in the present context.

In requiring the Reader to turn over Hobley's letters but not its reporter Conroy's notes of his interview with Hobley, Judge Brown observed that Hobley's letters were analogous to the tape recordings ordered disclosed in *McKevitt*. This court agrees with Judge Brown that tape recordings and letters have in common that the administrative burden involved in producing them is very limited. Beyond that, however, the court disagrees with any implication in Judge Brown's decision, which did not involve audio or video recordings, that such recordings of a non-public interview by a journalist are otherwise analogous to the letters ordered disclosed in *Hobley*. In many respects, such recordings are much more like the reporter's notes as to which Judge Brown quashed the *Hobley* subpoena. They reflect the journalist's thought processes, his or her method of investigation, and his or her choices about what should be published and what withheld. As Judge Brown observed regarding the reporter's notes in *Hobley*, "The only value of the notes to the Individual Defendants is the possibility that they *might* reflect something that Hobley said to Conroy that *might* be helpful to the Defendants." Order of September 16 at 12. Moreover, Judge Brown observed, the notes are the reporter's confidential work product, as is the case with the recorded interviews sought here. *Id.* at 13. Granted, compelled disclosure of reporters' notes is more invasive than the production of recordings since, as Judge Brown observed, the reporter involved would almost certainly have to be deposed to interpret the notes before any use could be made of them. But this court is of the view that recordings of interviews are in almost all important ways much more like interview notes than like unsolicited letters, and Judge Brown's analysis, applied here, counsels strongly against compelling disclosure.

Given the weak showing of materiality made by defendants, the lack of any compelling public interest in disclosure such as was present in *McKevitt* and the significant burden on important private and public interests compelled production in this case would involve, this court, pursuant to the balancing of interests required by Rule 45(c), grants the news organizations' Motion to Quash.

ENTER ORDER:

Joan B. Gottschall
United States District Judge

DATED: January 5, 2005