UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AARON PATTERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 03 C 4433 |
| | ) | |
| CHICAGO POLICE COMMANDER | ) | |
| JON BURGE, et al., | ) | Judge Joan B. Gottschall |
| | ) | Magistrate Judge Geraldine Soat Brown |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Magistrate Judge Geraldine Soat Brown

Before the court are motions filed by former Illinois Governor George Ryan ("Ryan") and the Illinois Prisoner Review Board ("PRB") to quash subpoenas requesting information about Ryan's decision to pardon Madison Hobley ("Hobley"), Leroy Orange ("Orange"), Aaron Patterson ("Patterson"), and Stanley Howard ("Howard") (collectively, "Plaintiffs").[1] For the reasons set out

---

[1] The subpoenas were served upon Ryan and the PRB in each of the four cases that were consolidated for certain purposes: *Hobley v. Burge*, 03 C 3678, *Patterson v. Burge*, 03 C 4433, *Howard v. City of Chicago*, 03 C 8481, and *Orange v. Burge*, 04 C 168. The motions before the court are: George Ryan's Motion to Quash Subpoena [*Hobley* dkt 476], filed only in the *Hobley* case; George Ryan's Motions to Quash Subpoena, filed in all four cases [*Hobley* dkt 538, *Patterson* dkt 350, *Orange* dkt 111, *Howard* dkt 127]; the Illinois Prisoner Review Board's Motions to Quash Subpoena for its Clemency Recommendation to the Governor, filed in two cases [*Hobley* dkt 535, *Patterson* dkt 343]; and Plaintiffs' Motions for a Protective Order and Motions to Quash Subpoena for the Prisoner Review Board's Findings and Recommendation Concerning Plaintiffs' Pardon, filed in three cases [*Hobley* dkt 546, *Patterson* dkt 355, *Orange* dkt 115]. The parties have made the same arguments in all four cases, and this opinion is rendered in all four cases. For simplicity, record references are cited to the docket of only one case.

1

below, those motions to quash are denied. Also, Plaintiffs' motion for a protective order and motion to quash, which relate to the subpoenas to Ryan and the PRB, are likewise denied.

## BACKGROUND

**Ryan's decision to pardon Plaintiffs**

Prior to January 10, 2003, Plaintiffs Hobley, Orange, Patterson, and Howard were incarcerated in Illinois prisons and sentenced to be executed. Each claimed that he had been tortured by Chicago Police officers and wrongly convicted. On January 10, 2003, then-Governor Ryan pardoned all four of them on the basis of innocence. (Ryan Mot. Quash ¶ 1 [*Hobley* dkt 538][2]; Certain Defs.' Resp., Ex. B at 7-8 [*Patterson* dkt 370][3].) At that time, Ryan also made a lengthy public statement about the facts in each Plaintiff's criminal case. (*Id.* at 3-8.)

Prior to Ryan's decision, the PRB had provided Ryan a clemency recommendation to use in deciding whether to pardon the Plaintiffs. (PRB Mot. Quash at 1 [*Hobley* dkt 535].) The PRB is the board of review and recommendation for the exercise of executive clemency by the Governor. 730 Ill. Comp. Stat. 5/3-3-1(a)(3) (2004). One of the duties of the PRB is to decide all requests for pardon, reprieve or commutation, and make a confidential recommendation to the Governor. *Id.* at 5/3-3-2(a)(6). However, the Governor has the exclusive power to grant a pardon.

On January 15, 2003, after concluding his term as Governor, Ryan appeared on the Oprah Winfrey television show with Hobley, Orange and Patterson, and discussed his decision to pardon

---

[2] Unless otherwise noted, all citations to Ryan's Motion to Quash ("Ryan Mot. Quash") are to dkt 538 in *Hobley*.

[3] All citations to "Certain Defs.' Resp." are to "Certain Defendants' Response to Motion to Quash Subpoena Directed to George H. Ryan", dkt 370 in *Patterson*.

the four Plaintiffs and to commute the death sentences of all other Illinois prisoners. (Certain Defs.' Resp., Ex. C, Winfrey Tr.) During that interview, Ryan also discussed his decision to create a Commission on Capital Punishment to study each case individually and the state's system of dealing with capital cases as a whole. (Winfrey Tr. at 8-9.) Ryan told Oprah Winfrey that his decision to pardon the Plaintiffs and commute all death sentences resulted in large part from a three year study done by the Commission. (*Id*. at 7-9, 19.) Ryan talked about his decision to pardon the Plaintiffs based on innocence, stating that the facts and DNA evidence showed them to be innocent. (*Id*. at 7-8.) Ryan stated that he had examined each of the four cases and determined that the Plaintiffs were innocent. (*Id*. at 8.) During that interview, Oprah Winfrey told Ryan that the victims' families wanted to know what evidence he used in granting the pardons. (*Id*. at 15.) Ryan responded that the only evidence against the Plaintiffs was obtained through brutal beating, electrocution, and suffocation. (*Id*. at 15-16.)

**Defendants' subpoenas to the PRB and to Ryan**

After being released from prison, Plaintiffs each filed lawsuits against Jon Burge and others, asserting claims under federal law for civil rights violations and under state law for, *inter alia*, malicious prosecution. Plaintiffs' attorneys intend to introduce the pardons, including the fact that the pardons were on the basis of innocence, as substantive evidence in support of their claims that the Plaintiffs were wrongly accused, prosecuted and convicted. (Pl.'s Mem. Supp. Mot. Prot. Or. at 3 [*Hobley* dkt 547].)

Certain Defendants served a subpoena on the PRB for the documents related to the Plaintiffs' requests for executive clemency. (PRB Mot. Quash, Ex. 1.) The PRB has moved to quash the subpoenas, arguing that the information requested is protected by the deliberative process

privilege. (PRB Mot. Quash at 1.) Plaintiffs have also moved to quash the subpoena to the PRB and moved for a protective order. (Pl.'s Mot. Prot. Or. at 1 [*Hobley* dkt 546].)[4] Subsequently, the PRB agreed to produce all of the documents sought in the subpoena, including the PRB's reports to Ryan for each Plaintiff, except for the last paragraph of the report (titled "Findings and Recommendation") that contains the PRB's recommendation to Ryan. (Dec. 2, 2005 Tr. at 26-31.) The remaining issue on the PRB's motion is whether the PRB must produce the Findings and Recommendation.

Certain Defendants in the *Hobley* case served Ryan with a subpoena to appear for a deposition and produce "[a]ny and all notes, memoranda, correspondence, notices, orders, directives, medical records, medical bills or other writings in your possession or the possession of your attorney relating to the claim herein." (Ryan [First] Mot. Quash, Ex. 1 [*Hobley* dkt 476].) Subsequently, Ryan received subpoenas in the *Orange*, *Patterson* and *Howard* cases to appear for a deposition and produce all documents within his possession related to his decision to grant executive clemency to Orange, Patterson, and Howard. (Ryan Mot. Quash, Exs. 1, 3 [*Patterson* dkt 350].) Ryan has moved to quash all of those subpoenas, arguing that the information sought under the subpoenas is irrelevant to the claims in the pending lawsuits, and that the subpoenas are overly broad, designed to harass him, and call for information that is protected by the "executive privilege." (*See* Ryan Mot. Quash ¶¶ 2, 4, 10, 11.) At the court's direction, Defendants' attorneys have attempted to obtain information and documents from sources other than Ryan. (*See* Certain Defs.' Resp. at 13 n. 8.) At argument on the motions, the parties advised the court that the issue

---

[4] Defendants assert that Plaintiffs lack standing to move to quash the PRB subpoenas. (Defs.' Resp. Pl.'s Mot. Prot. Or. at 2-3 [*Hobley* dkt 557].) It is not necessary to decide that issue, since Plaintiffs undoubtedly have standing to seek a protective order under Fed. R. Civ. P. 26(c).

4

with respect to the subpoenas to Ryan has been narrowed to whether he must testify at a deposition and produce any documents in his personal possession relating to his decision to pardon Plaintiffs. (April 28, 2006 Tr. at 31-32, 35.)

The court suggested that the parties attempt to reach a stipulation that would avoid the need to address the issues on the motions. (*Id*. at 37-38, 42-46.) No stipulation could be reached. (Pl.'s Resp. Defs.' Suppl. Submission at 1-2 [*Hobley* dkt 629].)

## DISCUSSION

Ryan and the PRB request that the court quash the subpoenas served upon them. A court may quash or modify a subpoena if it "requires disclosure of privileged or other protected matter and no exception or waiver applies, or subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iii), (iv). Plaintiffs seek a protective order under the authority of Rule 26(c): "Upon motion by a party or by the person from whom discovery is sought, . . . and for good cause shown, the court in which the action is pending . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. P. 26(c).

It is important to clarify what is *not* at issue on these motions. First, the power of a Governor under Illinois law to pardon any convicted individual is not at issue. Pursuant to the Illinois Constitution, "[t]he Governor may grant reprieves, commutations and pardons, after conviction, for all offenses on such terms as he thinks proper." Ill. Const. art. V, § 12. The Governor's "clemency powers . . . 'cannot be controlled by either the courts or the legislature. His acts in the exercise of the power can be controlled only by his conscience and his sense of public duty.'" *People ex rel. Madigan v. Snyder*, 208 Ill.2d 457, 473 (2004) (quoting *People ex rel. Smith*

5

*v. Jenkins*, 325 Ill. 372, 374 (1927)). Defendants do not challenge that power. Defendants are not seeking to challenge, overturn or attack the validity of the pardons Ryan granted to the Plaintiffs.

Second, the motions concern only the discoverability of the information sought in the subpoenas, not the issue of whether any of that information will be admitted as evidence at trial. Decisions about the admissibility of evidence rest with the judge presiding at the trial.

### A. Discoverability of the information sought

Discovery must be "relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1). However, the scope of relevant discovery is not limited to evidence admissible at trial, but extends to "discovery [that] appears reasonably calculated to lead to admissible evidence." *Id.*

Ryan argues that the information sought under the subpoenas is not discoverable because it is not relevant to the claims at issue in the pending lawsuits. (Ryan Mot. Quash. ¶¶ 2, 10.) Defendants argue that the information is discoverable because the Plaintiffs have pleaded that they are innocent of the crimes for which they were convicted, and Defendants have denied that allegation. (*See, e.g.*, Answer of Def. Virgil Minkus ¶¶ 2, 33 [*Hobley* dkt 373].) While opposing the subpoenas, Plaintiffs acknowledge that they intend to introduce as evidence at trial the fact that they were pardoned on the basis of innocence, and state that "the innocence pardon is relevant and admissible to show that the underlying criminal proceedings were terminated in plaintiff's favor." (Pl.'s Reply Supp. Mot. Prot. Or. at 4 [*Patterson* dkt 387].) Plaintiffs compare the pardons they received to a verdict that they were not guilty of the crimes for which they were convicted. Further, Plaintiffs assert that the pardons not only terminated the criminal proceedings favorably to them (a necessary element of some of Plaintiffs' claims), but that the pardons constitute a legally binding

6

finding that Plaintiffs are *innocent* of the criminal charges against them, and that Defendants cannot challenge or rebut that finding. (Pl.'s Resp. Defs.' Suppl. Submission at 2.)

Defendants point out that no court has ever found Plaintiffs not guilty of the crimes for which they were convicted. (Certain Defs.' Resp. at 12.)[5] The only findings that Plaintiffs are innocent are Ryan's pardons. (*See id.* at 3, 12.) Defendants want to question Ryan about why he issued the pardons, what facts he reviewed and considered when he issued the pardons, whom he consulted when he made the pardon decisions, and whether any new evidence that has come to light would have changed his decision. (*See id.* at 10-14.) Discovery of the basis of Ryan's decision to pardon the Plaintiffs on the basis of innocence, Defendants argue, goes to the "core of [their] defenses in each case." (*Id.* at 3.)

Plaintiffs' own pleadings provide further support for the discoverability of the information. Hobley pleaded in his Complaint: "*After reviewing the extensive evidence of Mr. Hobley's innocence and the deceitful and unlawful actions of the Defendant Officers*, on January 20, 2003, then-Governor George Ryan granted Mr. Hobley a full pardon on grounds of innocence." (Compl. ¶ 4 [*Hobley* dkt 1] (emphasis added).) Similar allegations are found in each of the Plaintiffs' Complaints. (*Patterson* First Am. Compl. ¶ 56 [dkt 43]; *Howard* Second Am. Compl. ¶¶ 7-10 [dkt 70]; *Orange* First Am. Compl. ¶ 52 [dkt 9].) Having specifically pleaded allegations describing the evidence that Ryan reviewed prior to granting the pardons, Plaintiffs cannot now argue that discovery should not be permitted on whether those allegations are true.

---

[5] Hobley's conviction was affirmed by the Illinois Supreme Court, and his state court post-conviction petitions were denied. (Defs.' Resp. Ryan [First] Mot. Quash at 2 [*Hobley* dkt 480].) The convictions of Patterson, Howard and Orange were affirmed by the Illinois Supreme Court, but each had post-conviction proceedings pending at the time they were pardoned by Ryan. (Certain Defs.' Resp. at 3 [*Patterson* dkt 370].)

The information sought by Defendants is relevant to the subject matter of the action, and thus within the scope of discovery. Whether the judges who will preside at the trials of the four cases will permit or preclude the admission of the evidence sought in the subpoenas is a matter not before this court. As discussed above, decisions on the admissibility of evidence at trial are reserved for the trial judge.

Accordingly, Plaintiffs' motions to quash and for a protective order are denied. However, that does not resolve the PRB's and Ryan's claims of privilege.[6]

**B.     The PRB's objection based on the deliberative process privilege**

As discussed above, the PRB has agreed to produce all the documents sought in the subpoena, except for the Findings and Recommendation, which the PRB asserts is protected by the deliberative process privilege. (PRB Mot. Quash at 2.)

The deliberative process privilege "covers documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated . . . . [I]ts object is to enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the Government." *Dept. of Interior v. Klamath Water Users Protective Assn.*, 532 U.S. 1, 8-9 (2001) (internal citations and quotation marks omitted).

A similar claim of deliberative process privilege was asserted by the PRB in *Evans v. City of Chicago*, 231 F.R.D. 302, 315-16 (N.D. Ill. Aug. 25, 2005). *Evans* was also a civil rights case

---

[6] Because the cases are in federal court as a result of the assertion of claims under federal law, all questions of privilege are governed by federal common law. Fed. R. Evid. 501; *Meml. Hosp. for McHenry Cty. v. Shadur*, 664 F.2d 1058, 1061 (7th Cir. 1981). This is true even though Plaintiffs also assert some claims under state law. *Id.*

brought by a pardoned former convict. After reviewing the authorities and the PRB's arguments, the court rejected the PRB's claim of deliberative process privilege, and ordered the PRB to produce the requested documents, including the PRB's Recommendation memorandum. *Id.* at 318-19.

This court agrees with the *Evans* court's analysis of what is required to establish the deliberative process privilege, and likewise concludes that the PRB's Findings and Recommendation paragraph is not protected by the deliberative process privilege. In this case, as in *Evans*, the PRB never submitted the type of formal claim of privilege by the department head that is the threshold requirement for a prima facie showing of deliberative process privilege. *See id.* at 316, 318 (citing *Ferrell v. U.S. Dept. of Housing & Urban Dev.*, 177 F.R.D. 425, 428 (N.D. Ill. 1998)). Notably, in this case the PRB stated its intention to file a "*Ferrell*" affidavit (PRB Mot. Quash at 3), and obtained an extension of time to do so (Order, Dec. 12, 2005 [*Hobley* dkt 549]), but never did. Instead, the PRB's counsel stated at oral argument that the PRB is relying on Ryan's assertion of privilege as establishing the PRB's privilege. (April 28, 2006 Tr. at 58.) However, as discussed below, Ryan claims that he is not asserting the deliberative process privilege but rather an "executive communications privilege" that, he claims, applies to him as Governor without the need to submit any formal claim of privilege. Thus, there has been no formal assertion of privilege on behalf of the PRB.

Furthermore, the court has reviewed *in camera* the Findings and Recommendation for each Plaintiff. The recommendation of the PRB reflects its final decision and the basis of that decision, and thus is post-decisional and not protected by the deliberative process privilege. *See Evans*, 231 F.R.D. at 319; *see also NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 153 n. 19 (1975) (stating that

9

"final opinions are pr[i]marily postdecisional—looking back on and explaining, as they do, a decison already reached or a policy already adopted—and that their disclosure poses a negligible risk of denying to agency decisionmakers the uninhibited advice which is so important to agency decisions").

In this case, parties on both sides of the motions argue that the District Judge's subsequent decisions on the admissibility of evidence in the *Evans* case support their respective positions. (See Pl.'s Suppl. Authority at 2-3, Ex. A, May 19, 2006 Tr. at 27 [*Hobley* dkt 633.]; SAO Defs.' Suppl. Resp. at 2-3, 5-6, Ex. A, June 2, 2006 Tr. at 3-4)[7] [*Orange* dkt 199].) However, as discussed above, whether any of the trial judges will allow the admission of this evidence at trial is not an issue before this court. The only issue is whether it is within the scope of discovery. For the reasons set out above, the PRB's Findings and Recommendation paragraph is within the scope of discovery.

## C. Ryan's Motion to Quash

To the extent that Ryan objects that the information sought in the subpoenas to him is irrelevant to the claims in the pending lawsuits, that objection is overruled for the reasons set out above. To the extent he objects that the subpoenas are overbroad and designed to harass him, that objection is moot because the issue has been narrowed, as discussed above.[8]

---

[7] The transcript provides June 2, 2005 as the hearing date. The docket in the *Evans* case demonstrates that the final pretrial order was signed on June 2, 2006. Therefore, the 2005 date appears to be a typographical error.

[8] Ryan also argues that enforcing the subpoena would work a substantial hardship on him because, at the time the motion was filed, he was a defendant in an ongoing criminal trial. (Ryan Mot. Quash at 3, ¶ 12.) However, that trial has since been concluded and that concern is moot.

The remaining issue is Ryan's assertion of a blanket privilege. Ryan claims that his decision to pardon the Plaintiffs is "cloaked by executive privilege." (Ryan Mot. Quash ¶ 4.) Citing Illinois law, he claims that "[t]he executive privilege protects a governor's deliberations related to his exercise of a core constitutional power." (*Id.* ¶ 5.) However, as noted above, in this case privileges are governed by federal common law.

In claiming a federal "executive privilege," Ryan's motion relies upon a blend of precedents considering a number of privileges that may be asserted by officers of the executive branch. (*See id.* ¶ 5, citing, *inter alia*, *Cheney v. U.S. Dist. Ct. for Dist. of Columbia*, 542 U.S. 367 (2004), and *K.L v. Edgar*, 964 F. Supp. 1206 (N.D. Ill. 1997).) Although the Supreme Court referred to an "executive privilege" in *NLRB v. Sears, Roebuck*, 421 U.S. at 150, that case involved the assertion of privilege by a government agency, and the privilege described by the Court for pre-decisional deliberations has subsequently been labeled the "deliberative process privilege." *See Dept. of Interior v. Klamath Water Users Protective Assoc.*, 532 U.S. at 8-9 (citing *NLRB v. Sears, Roebuck*).

In his reply, Ryan argues that he is not asserting the deliberative process privilege but rather a different federal privilege, which he calls the "executive communications privilege." (Ryan Reply at 3 [*Hobley* dkt 576].) Actually, the authorities he cites discuss the *presidential* communication privilege, not an *executive* communication privilege.

> While the presidential communications privilege and the deliberative process privilege are closely affiliated, the two privileges are distinct and have different scopes. Both are executive privileges designed to protect executive branch decisionmaking, but one applies to decisionmaking of executive officials generally, the other specifically to decisionmaking of the President. The presidential privilege is rooted in constitutional separation of powers principles and the President's unique constitutional role; the deliberative process privilege is primarily a common law privilege.

11

*In re Sealed Case*, 121 F.3d 729, 745 (D.C. Cir. 1997) (citation omitted).

Ryan cites no authority for his assertion of such a privilege. As Ryan acknowledges (Ryan Reply at 3 n. 2), federal courts have recognized the presidential communications privilege as belonging only to the President of the United States. In *Cheney*, the Supreme Court emphasized the "unique position" held by the Office of the President of the United States in the constitutional balance of powers. 524 U.S. at 381-82 (citing cases). The presidential communications privilege arises because of that unique position. *See U.S. v. Nixon*, 418 U.S. 683, 705-06 (1974). Ryan has not cited any federal court that has recognized the assertion of the presidential communications privilege by a state governor.

But even the presidential communications privilege is qualified, and, although more difficult to surmount than the deliberative process privilege, can be overcome by a focused demonstration of need. *In re Sealed Case*, 121 F.3d at 746. Also, a claim of privilege by a former President is accorded less weight than that of an incumbent President because there is less need to shield a former President from the burden of responding. *Nixon v. Administr. of Gen. Servs.*, 433 U.S 425, 448 (1977).

After careful consideration of the arguments and authorities, Ryan's motion to quash is denied. Ryan has failed to demonstrate that he can presently assert a privilege that overcomes Defendants' need for the evidence.

In these cases, Plaintiffs declined to agree to a stipulation that the criminal proceedings terminated favorably to them because they intend to introduce as evidence the fact that Ryan not only pardoned them but also determined them to be innocent, for whatever impact that determination may have on their civil claims. (Pl.'s Resp. Defs.' Suppl. Submission at 2.) Because

12

Ryan's determination will be part of the evidence presented to the trier of fact in these cases, the basis on which Ryan made that determination is within the scope of discovery.

In the circumstances of these cases, there is no other source to which Defendants can go to discover the basis of that determination but Ryan. Although Plaintiffs compare Ryan's determination to a jury verdict or judicial judgment, it is qualitatively different because the evidence in a trial or judicial proceeding is a matter of public record. In the case of all four Plaintiffs, the criminal proceedings on the public record never resulted in an acquittal. Only Ryan has made a determination that Plaintiffs are actually innocent of the charges for which they were convicted.

Against this need, Ryan claims an "executive communications privilege." The court finds no federal authority for extending to a state governor the presidential communications privilege. Furthermore, Ryan has disclaimed reliance on the deliberative process privilege and has not followed the established procedures for asserting that privilege. Additionally, if there is some privilege Ryan might have asserted to maintain the confidentiality of his deliberations in exercising his state constitutional authority to issue pardons, he has waived that privilege.

Privileges relating to governmental decisionmaking may be waived. *See, e.g.*, *Shell Oil Co. v. IRS*, 772 F. Supp. 202, 209 (D. Del. 1991) (holding that "[w]here an authorized disclosure is voluntarily made to a non-federal party, whether or not that disclosure is denominated 'confidential,' the government waives any claim that the information is exempt from disclosure under the deliberative process privilege"). However, such a waiver "should not be lightly inferred." *In re Sealed Case*, 121 F.3d at 741. "[W]ith regard to executive privileges generally, or to the deliberative process privilege in particular . . . courts have said that release of documents only

waives these privileges for the document or information specifically released, and not for related material." *Id.* (collecting cases).

Here, when Ryan announced the pardons, he gave a public statement detailing the evidence relating to each Plaintiff's criminal case. Ryan argues that privileges relating to government decisionmaking are not waived by issuing press statements or documents. (Ryan Reply at 7-8.) If his public statement at the time of the pardons had been Ryan's only public discussion of his decision, there might be an arguable issue as to whether it constituted a waiver of any privilege he might assert regarding that information. However, as discussed above, Ryan appeared on a nationally-televised talk show, along with Hobley, Patterson and Orange, specifically for the purpose of responding to questions by the host of the show regarding his decision to pardon Plaintiffs. He opened himself to, and responded to, any questions the host chose to ask on that topic, including "what is the evidence that [he] used to pardon Leroy Orange, along with the other three men." (Winfrey Tr. at 15.)

Having voluntarily agreed to respond publically to questions from a talk show host on the basis for his decision to pardon the Plaintiffs and the evidence he considered in making that decision, Ryan cannot now claim a privilege to refuse to give testimony in a civil case on that same topic.

Ryan expresses concern that the subpoenas here may chill present and future governors "who face the often unpopular, but critical, task of examining individual cases and deciding if a pardon is appropriate." (Ryan Mot. Quash ¶ 8.) This court is well aware of the fundamental importance of the Governor's unreviewable authority to pardon as his or her conscience dictates, and the political price the Governor may pay for doing so. Illinois history provides an example in

the courageous decision of Governor John Peter Altgeld in 1893 to pardon the individuals charged with murder of police officers in Haymarket riot. However, Ryan's situation is not at all like Altgeld's. Ryan is not an incumbent seeking re-election or higher office who is being interrogated about an unpopular decision. The risk that future pardon decisions will be chilled by requiring Ryan to be deposed in the unusual circumstances of these cases is small.

Accordingly, the court concludes that Defendants' need for the evidence they now seek—Ryan's deposition testimony and any documents in his personal possession relating to his decision to pardon the Plaintiffs—outweighs his arguments for the application of privilege in the particular circumstances of these cases.

## CONCLUSION

1. The following motions are denied: Ryan's Motion to Quash Subpoena [*Hobley* dkt 476]; Ryan's Motions to Quash Subpoena [*Hobley* dkt 538, *Patterson* dkt 350, *Orange* dkt 111, *Howard* dkt 127]; The Illinois Prisoner Review Board's Motions to Quash Subpoena for its Clemency Recommendation to the Governor [*Hobley* dkt 535, *Patterson* dkt 343]; and Plaintiffs' Motions for a Protective Order and Motions to Quash Subpoena for the Prisoner Review Board's Findings and Recommendation Concerning Plaintiffs' Pardon [*Hobley* dkt 546, *Patterson* dkt 355, *Orange* dkt 115].

2. At a mutually agreed date no later than September 30, 2006, George Ryan shall sit for his deposition pursuant to the subpoenas served in these cases. That deposition shall include questioning for all four cases.

3. No later than five business days prior to his deposition, George Ryan shall produce to Defendants' counsel who served the subpoenas all documents in his personal possession that he considered or reviewed in the process of deciding to pardon any or all of the Plaintiffs, Hobley, Patterson, Howard and Orange.

4. No later than August 16, 2006, the Illinois Prisoner Review Board shall produce to Defendants' counsel who issued the subpoenas the "Findings and Recommendation" paragraph relating to the clemency petitions of Hobley, Patterson, Howard and Orange.

5. The documents produced pursuant to Paragraphs 3 and 4 above shall be held "attorneys' eyes only" pursuant to the Protective Order entered in these cases until further order of the court.

IT IS SO ORDERED.

_____
Geraldine Soat Brown
United States Magistrate Judge

August 10, 2006