# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| AARON PATTERSON, | ) |
| | ) |
| Plaintiff, | ) Case No. 03 C 4433 |
| v. | ) |
| | ) Judge Joan B. Gottschall |
| JON BURGE, et al., | ) |
| | ) Magistrate Judge Geraldine Soat Brown |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Geraldine Soat Brown, United States Magistrate Judge

Before the court is a motion filed by defendants Jon Burge, John Byrne, Joseph Danzl, Raymond Madigan, William Marley, Daniel McWeeny, James Pienta, and William Pedersen for entry of a protective order. (Defs.' Emergency Mot. for a Protective Order re Grand Jury Materials ("Mot.") at 1.) [Dkt 522.] For the following reasons, the defendants' motion for entry of a protective order is GRANTED.

## BACKGROUND

Defendant Jon Burge is the former police commander of the Violent Crimes Unit of the Detective Division at Areas 2 and 3 for the City of Chicago. (Mot., Ex. A at 16.) The other defendants bringing the present motion (collectively with Burge, the "Movants") are former Chicago Police Department officers who worked at Areas 2 and 3 with or for Jon Burge. (*See* First Amended Compl. ¶¶ 3-6.) [Dkt 43.] Aaron Patterson, the plaintiff in this case, along with several other plaintiffs in lawsuits currently pending in the federal district court, alleges that he is a victim of

1

police brutality and other misconduct perpetrated by the defendants. (*See* First Amended Compl. ¶¶ 23-41.)[1]

On April 24, 2002, Presiding Judge Paul Biebel of the Cook County Criminal Court granted a petition for appointment of a special prosecutor to "investigate allegations of torture, perjury, obstruction of justice, conspiracy to obstruct justice, and other offenses by police officers under the command of Jon Burge at Area 2 and Area 3 Headquarters in the city of Chicago during the period from 1973 to the present." (Mot. at 1; Mot., Ex. A at 3.) The Office of the Special Prosecutor (OSP) impaneled a grand jury to gather evidence and to require the appearance of witnesses who refused to cooperate in the investigation. (Mot. at 1-2; Mot, Ex. A at 7.) Upon completion of the OSP's investigation in August 2006, Judge Biebel ordered the OSP to publish its findings and conclusions in a written report ("OSP Report"). (Mot. at 2; Mot., Ex. A at 16-17.) The OSP concluded that while there was evidence to suggest that police officers abused prisoners, the evidence in only three of the cases would support a conclusion of proof beyond a reasonable doubt.[2] (Mot., Ex. A at 16.) Nevertheless, the OSP concluded that the statute of limitations barred the prosecution of any officers involved in the allegations of police misconduct. (Mot., Ex. A at 13.)

Additionally, the OSP Report revealed that the OSP subpoenaed 40 Chicago police officers, including all Movants except Danzl, all but 11 of whom refused to testify. (Mot., Ex. A at 11, 14.) Movant McWeeny testified after the OSP granted him immunity from prosecution.

---

[1] *See Hobley v. Burge, et al.*, 03 C 3678, *Howard v. City of Chicago, et al.*, 03 C 8481, and *Orange v. Burge, et al.*, 04 C 0168. Those cases were assigned to separate calendars, but have been consolidated before this court for purposes of discovery. (*See* September 24, 2004 Order of the Executive Committee.) [Dkt 128.]

[2] The complainants in those three cases are not the plaintiffs in the pending federal civil rights cases. (Mot., Ex. A at 16.)

2

(Mot., Ex. A at 15.) The OSP Report does not reveal which other officers testified, nor does it disclose the subject matter of any testimony. (Mot. at 5.) Further, the OSP Report does not reveal which officers asserted their Fifth Amendment privilege not to testify. (Mot. at 5.)

On September 8, 2006, plaintiffs Hobley, Orange and Howard filed a motion in the Circuit Court of Cook County, requesting the release of grand jury materials, including transcripts of testimony of the Movants and other Chicago police officers. (Mot. at 2, 4.) At a hearing on September 26, 2006, Judge Biebel authorized the release of the grand jury materials subject to any protective orders entered by the federal court. (Mot. at 3.) Notably, Patterson did not seek the release of the grand jury materials -- the subject matter of the current motion for entry of a protective order. (Mot. at 2.)

On October 11, 2006, the Movants filed this motion, seeking a protective order that would bar the parties from disseminating the grand jury transcripts of Chicago police officers who appeared before the grand jury pursuant to the OSP's investigation. (Mot. at 8.)[3] Although the Movants do not object to the use of the grand jury transcripts for the litigation of this case, they contend that public disclosure of the grand jury proceedings conflicts with the principles of grand jury secrecy, will harm their reputation, and will allow Patterson to exploit several officers' assertion of their Fifth Amendment privilege. (Mot. at 4-5.)

Pursuant to this court's October 12, 2006 order, any response in opposition to the motion had to be filed by October 20, 2006. [Dkt 524.] While the other plaintiffs in the parallel civil rights

---

[3] The defendants in the parallel federal civil rights cases filed almost identical motions in *Hobley*, No. 03 C 3678 [dkt 733], *Howard*, No. 03 C 8481 [dkt 256], and *Orange*, No. 04 C 0168 [dkt 313].

cases filed responses in opposition to the motion, Patterson did not respond.[4]

**DISCUSSION**

Pursuant to Federal Rule of Civil Procedure 26(c), a court may issue a protective order.

> Upon motion by a party or by the person from whom discovery is sought, . . . and for good cause shown, the court in which the action is pending . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . .

Good cause "is difficult to define in absolute terms, it generally signifies a sound basis or legitimate need to take judicial action." *Wiggins v. Burge*, 173 F.R.D. 226, 229 (N.D. Ill. 1997) (quoting *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 356 (11th Cir. 1987)); *see also Hobley v. Burge*, 225 F.R.D. 221, 224 (N.D. Ill. 2004) (good cause for a protective order is established when the disclosure will cause "a clearly defined and serious injury"). In analyzing whether good cause exists for entry of a protective order, the court balances the importance of disclosure to the public against the harm to the party seeking the protective order. *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 859 (7th Cir. 1994) (citation omitted); *Wiggins*, 173 F.R.D. at 229. The court must consider the facts and circumstances of each case in determining whether good cause exists for a protective order. *Wiggins*, 173 F.R.D. at 229.

The Movants here seek a protective order to prevent Patterson from publicly disclosing

---

[4] *See* the plaintiffs' responses in *Hobley*, No. 03 C 3678 [dkt 736], *Howard*, No. 03 C 8481 [dkt 262], and *Orange*, No. 04 C 0168 [dkt 324]. In January 2007, by agreement of the parties in *Hobley*, *Howard* and *Orange*, all proceedings in those cases have been stayed so that the parties may pursue settlement negotiations. *See Hobley,* No. 03 C 3678 [dkt 761], *Howard*, No. 03 C 8481 [dkt 283]*,* and *Orange*, No. 04 C 0168 [dkt 389, 390]. Of the four cases consolidated by the September 24, 2004 Executive Committee Order, this lawsuit is the only one that has not been stayed.

transcribed grand jury testimony of Chicago police officers. (Mot. at 8.) The Movants maintain that the public dissemination of the grand jury materials will amount to a needless invasion of their privacy and harm to their reputation. *Id.* at 4-5, 8.

Central to the analysis, even before addressing the parties' respective arguments (to the extent they were made), is the fact that the subject matter of the proposed protective order involves grand jury materials. Under federal common law, grand jury proceedings have traditionally been kept secret. *Douglas Oil Co. of Cal. v. Petrol Stops N.W.*, 441 U.S. 211, 218-19, n. 9 (1979).[5] As the Supreme Court observed in *Douglas Oil*, "We consistently have recognized that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." *Id.* at 218. The confidentiality of grand jury proceedings serves numerous distinct interests, including the voluntary participation of prospective witnesses; the full and frank witness testimony of witnesses appearing before the grand jury; reducing the risk that those about to be indicted would flee or try to influence individual grand jurors to vote against indictment; and protecting from public ridicule persons accused but exonerated by the grand jury. *Id.* at 218-19; *U.S. v. Sells Engr., Inc.*, 463

---

[5] In a case such as this where the plaintiff's claims arise under federal law and a federal court considers the extent of the disclosure of state grand jury materials, federal common law, rather than state law, is the source of any privileged nature of grand jury proceedings. *Socialist Workers Party v. Grubisic*, 619 F.2d 641, 643 (7th Cir. 1980).

While *Douglas Oil* focused on federal grand jury proceedings, 441 U.S. at 213, the reasons for secrecy are the same in the context of state grand jury proceedings. *See In re Extended March 1975 Grand Jury No. 655*, 405 N.E.2d 1176, 1179 (Ill. App. 1st Dist. 1980) (stating that "[i]n Illinois, the purpose of secrecy surrounding grand jury proceedings is to prevent the escape of those under indictment, to insure the grand jury freedom in its deliberations, to prevent subornation of perjury, to encourage disclosure by witnesses, and to protect the innocent from unwarranted exposure"). Additionally, Illinois courts have applied the federal standard for breaking the secrecy of grand jury proceedings to the Illinois grand jury context. *See id.* at 1181, 1182 (holding that appellants did not meet the standard set forth by the United States Supreme Court in *Douglas Oil* because they "failed to meet their burden of demonstrating the existence of a particularized and compelling need which outweighs the policy of secrecy to merit such broad disclosure").

U.S. 418, 424 (1983).

Given the strong public policy reasons favoring the preservation of secrecy afforded grand jury proceedings, federal courts have "consistently held that a strong showing of particularized need is required before any grand jury materials are disclosed." *Lucas v. Turner*, 725 F.2d 1095, 1101 (7th Cir. 1984) (citing *Sells Engr.*, 463 U.S. at 443; *Douglas Oil*, 441 U.S. at 217-24). Indeed, "courts have been reluctant to lift unnecessarily the veil of secrecy from the grand jury," and only in a case where a "particularized need" is established, may "the secrecy of the proceedings [be] lifted discretely and limitedly." *Douglas Oil*, 441 U.S. at 217, 219, 221 (citing *U.S. v. Procter & Gamble Co.*, 356 U.S. 677, 683 (1958)). In *Lucas*, the Seventh Circuit stated:

> Indiscriminate lifting of the veil of secrecy from the grand jury will forever destroy the effectiveness of the grand jury as an investigative body by not allowing it "to ferret out crimes deserving of prosecution, or to screen out charges not warranting prosecution." Therefore, we will lift that veil only in very compelling and limited circumstances.

725 F.2d at 1109 (internal citations omitted).

Accordingly, parties seeking to lift the veil of secrecy surrounding the grand jury must show that the material they seek is necessary to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that the request is structured to cover only the material needed. *Douglas Oil*, 441 U.S. at 222.

Although *Procter and Gamble*, 356 U.S. at 681, *Douglas Oil*, 441 U.S. at 220, and *Lucas*, 725 F.2d at 1099-1100, all focused on the initial disclosure of grand jury materials pursuant to Rule 6(e) of the Federal Rules of Criminal Procedure (the rule codifying the long-standing tradition of the secrecy of grand jury proceedings), the analyses are nonetheless applicable to determining whether to implement protective safeguards for the grand jury testimony at issue here.

Having failed to respond to the motion for entry of a protective order, and in the absence of any indication that he originally sought the release of the grand jury materials when the opportunity arose in the Circuit Court of Cook County, Patterson can hardly claim a compelling interest to warrant public disclosure of the grand jury materials. In contrast, public disclosure of grand jury testimony in this high profile case increases the probability that prospective witnesses will be discouraged from participating in future grand jury proceedings. Also, although the grand jury's activities have ended, and the reasons for secrecy have ostensibly been reduced, the Movants maintain a residual interest in secrecy to protect them from adverse effects in future relationships, *Illinois v. Sarbaugh*, 552 F.2d 768, 775 (7th Cir. 1977), and from further invasion of privacy and harm to reputation, *Lucas*, 725 F.2d at 1107. Moreover, placing the transcripts under the existing protective order will not cause any apparent injustice to Patterson because he will still be able to use them in proceedings in this case. Thus, a protective order here furthers the goal that the veil of secrecy be lifted "discretely and limitedly" and that the request for disclosure is "structured to cover only material so needed." *Douglas Oil*, 441 U.S. at 221, 222.

In light of the well-established principles favoring secrecy for the protection of the institution of the grand jury, the court finds good cause for the entry of a protective order limiting the disclosure of the grand jury transcripts.

## CONCLUSION

For the foregoing reasons, the Movants' motion for entry of a protective order barring dissemination of the grand jury proceedings is GRANTED. The transcripts of the grand jury

7

proceedings relating to the investigation of the Office of the Special Prosecutor shall be deemed "Confidential Matter" to be held "attorneys' eyes only" pursuant to Paragraph 12 of the Protective Order entered March 30, 2005 [dkt 245]. Any page of those transcripts that is copied must bear the legend required by Paragraph 7 of that Order.

IT IS SO ORDERED.

_____
GERALDINE SOAT BROWN
United States Magistrate Judge

DATED: February 6, 2007