UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| AARON PATTERSON, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | Case No. 03 C 4433 |
| v. | ) | |
| | ) | Judge Joan B. Gottschall |
| JON BURGE, et al., | ) | |
| | ) | Magistrate Judge Geraldine Soat Brown |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Geraldine Soat Brown, United States Magistrate Judge

Before the court is Certain Defendants' Motion for Sanctions and Second Motion to Compel. (Def.'s Mot. Sanctions.) [Dkt 589.] Defendants City of Chicago, Terry Hillard, and Thomas Needham also joined in the motion. [Dkt 591.] For the reasons set out below, the motion is granted.

## BACKGROUND

This is the second motion filed by certain individual defendants (collectively here, "Defendants") regarding the deposition of plaintiff Aaron Patterson ("Patterson"). Defendants previously filed a motion to compel Patterson to answer questions that he had refused to answer at his deposition, and to compel production of certain documents allegedly provided to Patterson prior to his deposition. (Defs.' Mot. Compel.) [Dkt 421.] Except for the issue regarding the documents, that motion was rendered moot by the entry of a Stipulated Protective Order governing the use and disclosure of any deposition testimony that Patterson in good faith believes creates a concern for his personal safety if publically disclosed. (Order, June 14, 2006; Stip. Protective Order.) [Dkt 437,

1

438.] Following that order, Patterson's deposition was resumed, but apparently there were still questions that he declined to answer, and the present motion ensued.[1]

The present motion initially raised again the issue of the documents allegedly provided by Patterson's counsel. (Defs.' Mot. Sanctions at 4.) That issue was resolved when Patterson's present counsel agreed to produce a CD containing documents that Patterson had mentioned at his deposition. (*See* Order, March 16, 2007.) [Dkt 663.] Accordingly, that part of the motion is moot. The remaining disputes relate to questions that Patterson refused to answer at his continued deposition.

The scope of discovery extends to "any matter, not privileged, that is relevant to the claim or defense of any party . . . ." Fed. R. Civ. P. 26(b)(1). Discovery is not limited to evidence admissible at trial, but extends to "discovery [that] appears reasonably calculated to lead to admissible evidence." *Id.* Patterson's Third Amended Complaint alleges that Defendants "knowingly and maliciously tortured, prosecuted, imprisoned and sentenced an innocent Aaron Patterson to death." (Third Am. Compl. at 6.) [Dkt 693.] Patterson alleges that his injuries include "pain, suffering, fear, mental anguish, detention, imprisonment, humiliation, and loss of

---

[1] Because Patterson is currently incarcerated following his conviction in 2005 on unrelated federal charges, arrangements had to be made for taking his deposition. Defendants' counsel and Patterson's previous counsel met with the court and a representative of the security staff of the Metropolitan Correctional Center and worked out agreed procedures. For practical and security reasons, individual sessions of his deposition had to be limited to a few hours, resulting in counsel returning for a number of days of testimony. As used herein, the "first session" of Patterson's deposition refers to the deposition testimony taken between November 2005 and March 2006, the transcript of which is attached as Exhibit B to Defendants' Motion to Compel and contains pages 1-768. [Dkt 421.] The "second session" refers to the deposition testimony taken in August 2006, the transcript of which is attached as Exhibit D to the present motion and contains pages 916-1055. All references to Patterson's deposition testimony, whether from the first or second session, will be cited herein as "Dep. at __."

freedom and companionship." (*Id*. at 25.)

## ANALYSIS

I.  **Questions regarding Patterson's investigations and conversation with the Office of Police Standards**.

Patterson testified that one of the jobs he had following his release from prison after being pardoned was working for Professor David Protess "investigat[ing] cases," including this case. (Dep. at 42-43.)[2] Patterson testified that he was paid for that work. (*Id.*) He refused to testify about what he did to investigate this case. (*Id*. at 45-46.) His counsel asserted an objection of work product. (*Id*.) None of the lawyers at Northwestern University represent Patterson. (*Id*. at 970.) Patterson has also worked for Professor Jack Doppelt, who is a journalist, not an attorney. (*Id*. at 968.)[3] Patterson also refused to testify about his investigations for Professor Doppelt, and his counsel asserted "issues of confidentiality" and "journalistic ethics issues." (*Id*. at 970.)

Defendants seek an order compelling Patterson to testify to facts that he learned during his investigations regarding this case. (Defs.' Mot. Sanctions at 5-6.) In response, Patterson argues the general principle that an attorney's notes are protected work product, as are notes taken by an agent working on the attorney's behalf. (Pl.'s Resp. at 7.) However, that argument misses the mark;

---

[2] Professor Protess teaches at the Medill School of Journalism at Northwestern University, where he has led teams of students in investigating claims of wrongful convictions, resulting in several exonerations. *See* Alex Doniach, *Protess honored with Puffin/Nation Award*, http://www.medill.northwestern.edu/medill/inside/news/protess_honored_with_puffinnation_award.html (Dec. 16, 2003) (last visited May 4, 2007).

[3] Professor Doppelt also teaches at the Medill School of Journalism. *See* Jeannie Vanasco, *Medill Professor's Supreme Court Site is One of a Kind* http://www.medill.northwestern.edu/medill/inside/news/medill_professors_supreme_court_site_is_one_of_a_kind.html (Dec. 17, 2004) (last visited May 4, 2007).

Defendants' motion does not address any documents as to which work product protection has been asserted.[4] Defendants seek to compel further deposition testimony, and the information sought is not protected attorney work product. The work product privilege protects "documents and tangible things otherwise discoverable . . . prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative . . . ." Fed. R. Civ. P. 26(b)(3). Defendants' motion seeks to compel Patterson to testify about factual information that he has about this case, which is not protected work product.

> [T]he work-product protection cannot be asserted to prevent disclosure of the underlying facts, which are discoverable in any adversary proceeding. A document may be protected from compelled disclosure. An attorney may not be forced to take the stand and testify as to that attorney's mental impressions. That does not, however, mean that the underlying facts thereby are absolutely protected from discovery, either by way of interrogatories or by way of depositions of other knowledgeable witnesses, discovered through interrogatories.

Edna Selan Epstein, *The Attorney-Client Privilege and the Work Product Doctrine* 488 (American Bar Association 4th ed. 2001). Additionally, the fact that Patterson obtained the information in the course of his paid investigations for the professors, who are not representing him in this case, undermines his claim that the material was prepared "in anticipation of litigation or for trial."

Patterson's response to this motion does not present any argument or authority regarding his assertion of any other claimed privilege, such as "journalistic ethics," and accordingly, any other argument is waived.

Defendants' motion in this respect is granted: Patterson must testify as to any factual information of which he is aware regarding this case, whether or not that information was obtained

---

[4] Presumably, all documents, whether prepared by an attorney or anyone else, as to which protection is claimed have been identified on a privilege log, as required by Rule 26(b)(5)(A).

in the course of his investigations for the professors.

Likewise, Patterson refused to testify fully regarding a meeting he had in May 2004 with Lori Lightfoot, then the director of the Office of Police Standards. (Dep. at 720-25.) He did not deny that the meeting was relevant "at all" to the lawsuit (*id*. at 722), but refused to answer questions about it (*id*. at 724-25). Patterson did not give any reason for his refusal to answer, and his response to Defendants' motion does not present any argument justifying that refusal. Patterson must answer questions about that meeting.

## II. Questions about gang involvement.

Patterson testified that he was a member of the Apache Rangers gang (Dep. at 68, 71), but he refused to answer other questions about his gang participation, for example, whether he was a gang member in high school or college. (*Id*. at 554, 556; *see also id*. at 75, 79.) His answer to the question of whether he is currently a gang member was cryptic at best: "Not that I recall if I remember or not. I am a member of a movement." (*Id*. at 931.) But then he refused to answer questions about the "movement." (*Id*.) After the first session of Patterson's deposition, the Stipulated Protective Order was entered, allowing Patterson to designate as "Confidential" and limiting disclosure of any portions of his deposition that he believes in good faith would create a concern for his personal safety. (Stip. Protective Order ¶ 2.) The purpose of that order was to permit Patterson to respond to all of Defendants' counsel's questions regarding his participation in gangs without fear of jeopardizing his safety. Thus, any objections based on "safety concerns" that Patterson has raised are overruled in light of the entry of the Stipulated Protective Order.

Patterson's response to the present motion is that the questions regarding his gang affiliation

and gang activities are irrelevant and intended to annoy him. (Pl.'s Resp. at 8.) [Dkt 633.] However, Defendants argue that the Sanchez murder for which Patterson was convicted and subsequently pardoned was gang-related and involved gang member witnesses; thus, Patterson's gang affiliation and the possible gang affiliations of potential witnesses, as well as the gang-related incidents that occurred near in time to the Sanchez murders are relevant. (Defs.' Mot. Sanctions at 8, 11; Defs.' Reply at 6 [dkt 650].) That the questions relate to events as long as 20 years ago is not surprising because the murder for which Patterson was convicted took place in 1986. (Third Am. Compl. ¶ 16.)

Importantly, a disagreement about the relevance of a question is not a basis for refusing to answer. As the Seventh Circuit recently observed, a party may not simply refuse to answer questions. *Redwood v. Dobson*, 476 F.3d 462, 467-68, 469 (7th Cir. 2007). Deposition questions are to be answered notwithstanding an objection, unless the objection is to preserve a privilege. Fed. R. Civ. P. 30(c). A party who believes that a deposition is being conducted in bad faith, or in such manner as to unreasonably annoy, embarrass or oppress the deponent, may halt the deposition and apply for a protective order under Rule 30(d)(4). *Redwood*, 476 F.3d at 367-68. But Patterson did not bring any motion under that Rule; he simply refused to answer. Such conduct may be grounds for sanctions. *See id.* at 470 (sanctioning attorney for advising his client not to answer questions which he believed were intended to harass, rather than applying for a protective order under Rule 30(d)(4)). Accordingly, Patterson must answer Defendants' counsel's questions regarding Patterson's gang affiliation and his knowledge of gang affiliations of potential witnesses, as well as the gang-related incidents that occurred near in time to the Sanchez murders.

6

### III. Questions about potential witnesses.

In addition, Defendants request that Patterson be compelled to answer all questions relating to the whereabouts of, his relationship to, and recent conversations with Sharon Haynes, the witness who provided an alibi for Patterson at his murder trial. (Defs.' Mot. Sanctions at 8-9.) Ms. Haynes has been listed as a potential witness for Patterson in this trial, and Defendants are simultaneously moving to have her held in contempt of court for failure to appear in response to a subpoena for her deposition. [Dkt 639.] Patterson's response to the motion states that he answered all of Defendants' counsel's deposition questions regarding Ms. Haynes, and that when he answered "I don't remember" or "I don't recall," it was "probably" due to the fact that some of the conversations occurred 20 years ago. (Pl.'s Resp. at 10.)

A review of the transcript discloses that Patterson's answers to questions about Ms. Haynes —even questions about his recent contacts and conversations with her—were incomplete and evasive. He testified that he saw her "off and on" after his pardon and that he is "sure" he talked to her. (Dep. at 946-47.) But, when asked what he spoke to Ms. Haynes about after his pardon, Patterson answered "[p]ersonal matters," and then stated that he "wouldn't discuss it . . . ." (*Id*. at 947.) Defendants' counsel also asked Patterson where Ms. Haynes lived, to which Patterson answered, "You've got investigators. Go to 86th and Paxton and I'm sure you will locate her." (*Id*.) Defendants' counsel asked Patterson when he saw Ms. Haynes, including whether he saw her more than once or twice, and where he saw her. (*Id*. at 945-47.) Patterson responded that he did not recall how many times he saw Ms. Haynes, and was vague about where he saw her (e.g., "on the block," "in traffic," "just passing through"). (*Id*. at 946-48.) Patterson must answer Defendants' counsel's questions regarding his knowledge as to Ms. Haynes's whereabouts. To the extent Patterson can

7

provide more specific information about when and where he saw Ms. Haynes and the subjects they discussed, he must provide such information in response to Defendants' counsel's questions.

In addition, Defendants complain that Patterson refused to disclose the identity of the boyfriend of prosecution witness Marva Hall. (Defs.' Mot. Sanctions at 9-10.) At his deposition, Patterson stated that he became friends with Ms. Hall because he "knew her boyfriend at the time." (Dep. at 103.) Patterson then testified that he would prefer not to discuss the boyfriend's name for safety reasons. (*Id*.) However, as discussed above, Patterson's objections based on "safety concerns" are overruled based on the entry of the Stipulated Protective Order. At the second session of his deposition, Patterson again refused to identify Ms. Hall's boyfriend, stating that Defendants' counsel should ask Ms. Hall who her boyfriend was "to be more accurate." (*Id*. at 938.) Patterson must state to whom he was referring when he stated that he knew Ms. Hall's boyfriend and answer reasonable follow-up questions regarding that person. Also during his deposition, Patterson stated that the last time he saw Ms. Hall was "the early part of April, sometime like – somebody['s] birthday . . . ." (*Id*. at 106.) He later testified that he was not sure whose birthday it was but he "assum[ed] it was Rederick Manning's birthday." (*Id*. at 938.) It appears, from that answer, that Patterson gave Defendants' counsel the most accurate answer he could. If Patterson can provide a more definite answer to this question, though, he must do so.

**IV.   Questions about damages.**

Additionally, Defendants seek to compel Patterson to answer certain questions regarding his background, arguing that such information is relevant to the issue of damages in light of Patterson's claim that he suffered loss of income and loss of earning capacity due to the alleged misconduct of

Defendants. (Defs.' Mot. Sanctions at 10-11.) Patterson refused to answer certain questions, including questions about income he received after his pardon, and the location where he leased property. (Dep. at 1025-26.) Patterson now argues that none of the information sought is relevant to the claims and factual allegations at issue. (Pl.'s Resp. at 12.) However, such questions may elicit information relevant to Patterson's claim that he suffered a loss of income and earning capacity. Thus, Patterson must answer the questions outlined in Defendants' motion on this issue. *See* Fed. R. Civ. P. 26(b)(1) (permitting the discovery of any matter relevant to the subject matter of the pending action, so long as the sought after information is not privileged, and even if inadmissible at trial, if the information sought appears reasonably calculated to lead to the discovery of admissible evidence).

### V.     Questions about conspiracy issues.

Count VII of Patterson's Third Amended Complaint alleges that Defendants and others including Mayor Daley, former Police Superintendent Hillard, States Attorney Devine, "along with other unsued co-conspirators" conspired to falsely imprison, maliciously prosecute and intentionally inflict severe emotional distress on Patterson. (Third Am. Comp. ¶ 98.) Defendants request that Patterson be compelled to answer questions relating to his conspiracy claim, questions which Patterson refused to answer at his deposition. (Defs.' Mot. Sanctions at 11-13.) Patterson's answers to some questions appear to suggest that he believes that the alleged conspiracy extends to his 2005 conviction on federal charges. (*See, e.g.*, Dep. at 1001-02.) However, in response to a question regarding whether he believed that Defendants and the Mayor had a motive to "set [him] up," Patterson responded that he was "not going to discuss those details until I put them out there

9

publicly." (*Id*. at 758.) He then stated, in response to a question regarding what details he had to support his claim, that he was not going to turn over any information at that time. (*Id*.) Similarly, Patterson stated that he would not disclose any facts he had to support his assumption that Mara Georges played a role in the investigation leading to the federal charges that resulted in his incarceration. (*Id*. at 1004-05.) Patterson's response to Defendants' motion does not present any argument justifying his refusal to answer those questions. Indeed, Patterson does not even address Defendants' argument in his response. Unless there is a valid objection on the basis of privilege (and none was raised), Defendants' questions relating to Patterson's claim that there was a conspiracy against him (*see* Defs.' Mot. Sanctions at 11-13) are relevant and must be answered. If Patterson has information that he believes supports his claim of conspiracy, he must testify about it to the best of his knowledge.

## CONCLUSION

For the foregoing reasons, Certain Defendants' Motion for Sanctions and Second Motion to Compel [dkt 589] is granted as set out above. The court declines to order that written questions and answers be substituted for oral testimony, as suggested in Defendants' Reply (at 7). It is the Defendants' option to serve (or seek leave to serve, if necessary) additional interrogatories, if they believe that written questions and answers will be more efficient. Patterson is warned that if he fails to comply with this Order, *i.e.*, if he fails to respond fully and completely to Defendants' counsel's questions at his next deposition session, he may be sanctioned pursuant to Rule 37.

**IT IS SO ORDERED.**

*[signature]*

**GERALDINE SOAT BROWN**
**United States Magistrate Judge**

**DATED: May 4, 2007**